# IN THE SUPREME COURT OF TEXAS

═══════════════

No. 12-1039

═══════════════

LUBBOCK COUNTY WATER CONTROL AND IMPROVEMENT DISTRICT AND
TOMMY FISHER, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE BOARD OF
DIRECTORS OF THE LUBBOCK COUNTY WATER CONTROL AND IMPROVEMENT
DISTRICT, PETITIONERS,

v.

CHURCH & AKIN, L.L.C., RESPONDENT

══════════════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SEVENTH DISTRICT OF TEXAS
══════════════════════════════════════════════════════════════

**Argued January 8, 2014**

JUSTICE BOYD delivered the opinion of the Court, in which CHIEF JUSTICE HECHT, JUSTICE GREEN, JUSTICE GUZMAN, JUSTICE LEHRMANN, JUSTICE DEVINE, and JUSTICE BROWN joined.

JUSTICE WILLETT filed a dissenting opinion.

JUSTICE JOHNSON did not participate in the decision.

In this interlocutory appeal from the denial of a governmental entity's plea to the jurisdiction, we determine whether the parties' lease agreement constituted "a written contract stating the essential terms of [an] agreement for providing goods or services to [a] local governmental entity" under Chapter 271 of the Texas Local Government Code. We hold that, although the lease generally prohibited the lessee from using the property for any purpose other than operation of a marina, the lessee did not agree to provide marina-operation services or any other goods or services to the

governmental entity. Chapter 271 therefore does not waive the governmental entity's immunity from suit, and we dismiss the lessee's claims for lack of jurisdiction.

**I.**
**Background**

The Lubbock County Water Control & Improvement District operates the Buffalo Springs Lake. Patrons who use the lake for recreational purposes must pay to access the lake area through a controlled gate. For many years, the Water District operated a marina on the lake, which included a restaurant and gas station. In 2007, the Water District stopped operating the marina and leased the marina premises to Church & Akin, LLC, for a three-year term. The lease provided that the premises were "to be used only as a Lake marina, restaurant, gasoline and sundry sales and as a recreational facility," unless the Water District gave written consent for Church & Akin to use the premises for other purposes. The Water District agreed in the lease not to unreasonably withhold such consent. Church & Akin agreed to pay rent in the amount of $3,000 per year plus 5% of its gross sales, excluding sales of gasoline. The lease also contained a provision stating that the marina would issue "catering tickets," which the marina would redeem for $1.00 each.

The lease gave Church & Akin an option to extend at the end of the initial three-year term for up to five additional five-year terms, as long as it was in compliance with the lease. When the initial term expired in 2010, Church & Akin elected to extend the lease and tendered payment for the following year's rent. The Water District accepted the payment but then terminated the lease six months later. Church & Akin sued the Water District for breach of contract, alleging that the Water District had no right to terminate the lease. The Water District filed a plea to the jurisdiction

2

asserting governmental immunity and arguing that several possible statutory waivers of immunity, including chapter 271 of the Texas Local Government Code,[1] did not apply. Church & Akin responded by arguing that chapter 271 did apply and amended its pleadings to assert waiver of immunity.

The trial court denied the plea to the jurisdiction, and the Water District filed an interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8) (granting courts of appeals jurisdiction to hear interlocutory appeals from the grant or denial of governmental unit's plea to the jurisdiction). The court of appeals affirmed the trial court's denial of the plea to the jurisdiction, concluding that chapter 271 waived the Water District's immunity from suit for breach of the parties' written lease agreement.[2] The Water District petitioned this Court for review, which we granted.[3]

---

[1] TEX. LOC. GOV'T CODE § 271.151(2)(A) (defining "[c]ontract subject to this subchapter"); *id.* § 271.152 (waiving sovereign immunity to suit for purposes of certain breach of contract claims arising out of a "contract subject to this subchapter").

[2] Church & Akin also asserted claims alleging a constitutional taking and various torts. The court of appeals held that the trial court erred in denying the Water District's plea to the jurisdiction with respect to these claims and dismissed the claims for lack of jurisdiction. ___ S.W.3d at ___. Church & Akin has not appealed from the court of appeals' dismissal of these claims, so we do not consider them here.

[3] Generally, a court of appeals' judgment on interlocutory appeal is final. *See* TEX. GOV'T CODE § 22.225(b)(3). This Court has jurisdiction to review such a judgment, however, when "the justices of the court of appeals disagree on a question of law material to the decision or in which one of the courts of appeals holds differently from a prior decision of another court of appeals or of the supreme court." *Id.* § 22.225(c). In this context, "one court holds differently from another when there is inconsistency in their respective decisions that should be clarified to remove unnecessary uncertainty in the law and unfairness to litigants." *Id.* § 22.225(e). Here, the court of appeals held that Church & Akin agreed to provide services to the Water District because the lease "provided [the Water District] the benefit of an operating marina." ___ S.W.3d at ___. As we explain below, this holding is inconsistent with our holdings in *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 839 (Tex. 2010) (holding that the waiver of immunity under Chapter 271 does not extend to "contracts in which the benefit that the local governmental entity would receive is an indirect, attenuated one") (quoting *Berkman v. City of Keene*, 311 S.W.3d 523, 527 (Tex. App.—Waco 2009, no pet.)), and *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 925 (Tex. 2013) (holding that a party does not seek or acquire services when "when it merely arranges for a service to be provided to its customers, even if the party indirectly benefits from the provision of that service"). We therefore have jurisdiction to review the court of appeals' judgment on interlocutory appeal.

3

**II.**
**Immunity and Waiver**

The Water District is a local governmental entity. *See* TEX. LOC. GOV'T CODE § 271.151(3)(C). Local governmental entities "enjoy governmental immunity from suit, unless immunity is expressly waived." *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 836 (Tex. 2010).[4] Governmental immunity includes both immunity from liability, "which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether." *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). A governmental entity that enters into a contract "necessarily waives immunity from liability, voluntarily binding itself like any other party to the terms of agreement, but it does not waive immunity from suit." *Id.* Unlike immunity from liability, immunity from suit deprives the courts of jurisdiction and thus completely bars the plaintiff's claim. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 696 (Tex. 2003).

The doctrine of governmental immunity arose hundreds of years ago from the idea that "the king can do no wrong," but it remains a fundamental principle of Texas law, intended "to shield the public from the costs and consequences of improvident actions of their governments." *Tooke*, 197 S.W.3d at 331–32. Because the decision to require the public to bear the costs and consequences of a particular governmental action requires balancing numerous policy considerations, we have

---

[4] "Sovereign immunity" protects the State and state-level governmental entities, while "governmental immunity" protects political subdivisions of the State such as counties, cities, and districts like the Water District in this case. *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 324 (Tex. 2006). The two doctrines are otherwise the same, and courts often use the terms interchangeably. *Id.* at 323–24 n.2.

consistently deferred to the Legislature, as the public's elected representative body, to decide whether and when to waive the government's immunity. *Id.* at 332; *see also Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 326–27 (Tex. 2006). When the Legislature makes the policy decision to enact a statute that waives governmental immunity, it can do so "only by clear and unambiguous language." *Tooke*, 197 S.W.3d at 328–29; *see also Wichita Falls State Hosp.*, 106 S.W.3d at 697 ("a statute that waives the State's immunity must do so beyond doubt"). The Legislature itself has demanded such clarity. TEX. GOV'T CODE § 311.034 ("In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language.").

Church & Akin contends that the Legislature has waived the Water District's immunity against this suit through section 271.152 of the Local Government Code, which "provides a limited waiver of immunity for local governmental entities that enter into certain contracts." *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 412 (Tex. 2011); *see also Kirby Lake*, 320 S.W.3d at 838 (stating that the statute "waives immunity from suit for certain contract claims"). This waiver applies only to contracts that are in writing, are properly executed, and state "the essential terms of the agreement for providing goods or services to the local governmental entity." TEX. LOC.

GOV'T CODE § 271.151(2)(A).[5] When a local governmental entity enters into such a contract,[6] it "waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter." *Id.* § 271.152; *see also Sharyland*, 354 S.W.3d at 412–13 (describing "limited waiver of immunity" under section 271.152). One of the "terms and conditions" of the subchapter limits the claimant's recovery to "the balance due and owed by the local governmental entity under the contract," plus attorney's fees and interest. TEX. LOC. GOV'T CODE § 271.153(a)(1).

The principal dispute in this appeal is whether the parties' contract includes an "agreement for providing goods or services to the [Water District]." *Id*. § 271.151(2)(A). The Water District contends that the parties' contract is a lease of real property, not an agreement to provide goods or services. We agree with Church & Akin, however, that courts must look beyond the title of a written contract to determine whether it satisfies chapter 271's waiver requirements. In *Kirby Lake*, for example, although the parties' contract was entitled "Sales Agreement and Lease of Facilities," 320 S.W.3d at 832, we looked to the contract's terms and found that it included an agreement to provide services to the governmental entity. *Id*. at 839. The statute does not require a written contract that *is* an agreement for providing goods or services; rather, it requires a "written contract stating the

---

[5] In 2013, the Legislature added a second type of contract to which chapter 271's waiver of governmental immunity applies: "a written contract, including a right of first refusal, regarding the sale or delivery of not less than 1,000 acre-feet of reclaimed water by a local governmental entity intended for industrial use." TEX. LOC. GOV'T CODE § 271.151(2)(B). The new provision only applies to claims that arise under a contract executed on or after the effective date of the amendments in 2013. *See* Act of May 22, 2013, 83rd Leg., R.S., ch. 1138, § 2, 2013 Tex. Gen. Laws ___, ___ (codified at TEX. LOC. GOV'T CODE § 271.151(2)(B)). That provision is not at issue here.

[6] The local governmental entity must be "authorized by statute or the constitution to enter into a contract." TEX. LOC. GOV'T CODE § 271.152. The parties do not dispute that the Water District was authorized to enter into the lease with Church & Akin.

6

essential terms of the agreement for providing goods or services." Tex. Loc. Gov't Code § 271.151(2)(A). Although the contract at issue in this case is a lease of real property, "a contractual relationship can include both the granting of a property interest *and* an agreement to provide goods or services." *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 925 (Tex. 2013) (emphasis added). Any written, authorized contract that states the essential terms of an agreement for providing services to the governmental entity triggers the waiver of immunity under chapter 271.

We also agree with Church & Akin that the agreement to provide services to the governmental entity "need not be the primary purpose of the agreement." *Kirby Lake*, 320 S.W.3d at 839. We noted in *Kirby Lake* that this Court had "liberally construed a government-pooled insurance policy" in *Ben Bolt* "as encompassing 'services' rendered by its members based on the fact that the Fund's members elect[ed] a governing board, and a board subcommittee resolved claims disputes." *Kirby Lake*, 320 S.W.3d at 839 (citing *Ben Bolt*, 212 S.W.3d at 327). We recognized that the primary purpose of the contract in *Ben Bolt* was for the fund (a governmental entity) to provide insurance services to its members (also governmental entities), but we concluded that the members had also agreed to provide services to the fund by participating in the election of its governing board and in the resolution of disputed claims. *Ben Bolt*, 212 S.W.3d at 327. The existence of the essential terms of that agreement within the written contract was sufficient to trigger the statute's waiver of immunity. *Id*.

Thus, a written contract that triggers chapter 271's waiver of immunity is one that states the essential terms of an agreement to provide goods or services to the local governmental entity, regardless of the document's title and even if the provision of goods and services is not the primary

purpose of the contract. In this case, Church & Akin argues that the lease includes agreements to provide services to the Water District because Church & Akin agreed to "(1) operate the marina; (2) issue and redeem catering tickets; and (3) return a percentage of its profits from sundry sales."[7] We address each of these arguments in turn.

## A.      Operation of the Marina

Church & Akin contends that it agreed in the lease's "use" provision to provide a service to the Water District by operating the marina. The court of appeals agreed, relying on our opinions in *Kirby Lake* and *Ben Bolt. See* — S.W.3d —, —. In *Kirby Lake*, we observed that chapter 271 does not define the term "services," and that the ordinary meaning of the term "is broad enough to encompass a wide array of activities." 320 S.W.3d at 839. In support of this statement, we cited authorities holding that the term "includes generally any act performed for the benefit of another under some arrangement or agreement whereby such act was to have been performed," *id.* (quoting *Van Zandt v. Fort Worth Press*, 359 S.W.2d 893, 895 (Tex. 1962)), but would not extend to "contracts in which the benefit that the local governmental entity would receive is an indirect, attenuated one." *Id.* (quoting *Berkman v. City of Keene*, 311 S.W.3d 523, 527 (Tex. App.—Waco 2009, no pet.)).

Applying these authorities, the court of appeals concluded in this case that, "[a]lthough the operation of a marina was not the stated primary purpose of the contract," the contract's "use"

---

[7] The lease also requires Church & Akin to maintain the premises, maintain adequate insurance coverage, and pay ad valorem taxes imposed on the property. The Water District contends that these duties are merely standard obligations of a lessee, and do not constitute agreements to "provide services" separate from those standard duties. Church & Akin does not argue to the contrary, so we do not address these agreements in this case.

provision "elevated the lease to more than simply a lease of real property . . . it provided [the Water District] the benefit of an operating marina." — S.W.3d at —. The Water District argues that the "use" provision of the lease did not, as the court of appeals implied, obligate Church & Akin to operate a marina on the leased premises; it merely prohibited Church & Akin from using the premises for any other purpose, at least without first obtaining the Water District's consent. Church & Akin disagree, contending that the "use" provision's restriction that the premises "are leased *to be used* only as a Lake marina" indicates that the lease not only prohibited other uses but also mandated that the premises "be used" as a marina.

We agree with the Water District on this point. Under the terms of the written lease agreement, Church & Akin could have elected not to use the premises for any purpose. Specifically, the lease states:

> The premises are leased to be used only as a Lake marina, restaurant, gasoline and sundry sales and as a recreational facility. Lessee agrees to restrict their use to such purposes, and not to use, or to permit the use of, the premises for any other purpose without first obtaining the consent in writing of Lessor or Lessor's authorized agent. Lessor agrees not to unreasonably withhold consent.

Under this language, Church & Akin was not required to operate a marina; it was merely restricted from using the premises for a different purpose without consent. This Court has previously recognized the important difference between an agreement that *restricts* the use of property *to* a specific purpose and one that *requires* the use of property *for* a specific purpose: "a provision in a lease that the premises are to be used only for a certain prescribed purpose imports no obligation on the part of the lessee to use or continue to use the premises for that purpose; such a provision is a covenant against a noncomplying use, not a covenant to use." *Universal Health Servs., Inc. v.*

9

*Renaissance Women's Grp., P.A.*, 121 S.W.3d 742, 747 (Tex. 2003) (quoting *Weil v. Ann Lewis Shops, Inc.*, 281 S.W.2d 651, 653 (Tex. Civ. App.—San Antonio 1955, writ ref'd)). Thus, although both parties may have contemplated that Church & Akin would operate a marina, the language of the contract did not require it to do so, and thus Church & Akin did not contractually agree to do so. When a party has no right under a contract to receive services, the mere fact that it may receive services as a result of the contract is insufficient to invoke chapter 271's waiver of immunity. At best, such services are only an "indirect" and "attenuated" benefit under the contract. *Cf. Kirby Lake*, 320 S.W.3d at 839.

Moreover, even if we could construe the lease to include a contractual agreement to use the property as a marina, Church & Akin's provision of marina services to the Water District's constituents would not constitute the provision of such services to the Water District itself. We recently rejected a similar argument in *Coinmach*, 417 S.W.3d at 924–26. There, a lessee leased rooms in an apartment complex and installed coin-operated laundry machines for use by the apartment complex's other tenants. *Id.* at 913. Like Church & Akin here, the lessee in *Coinmach* paid rents based on the income it earned from operations on the leased premises. *Id.* at 925. The owner of the apartment complex argued that it was a "consumer" under the Deceptive Trade Practices Act because the lessee provided a "service" to the owner by maintaining the laundry machines, collecting and accounting for the proceeds from the machines, and providing the convenience of the laundry rooms to the other tenants. *Id.* at 925. We disagreed, observing that, as to the owner, the lessee was itself a tenant, and it provided its laundry services to the other tenants, not to the owner of the apartment complex. *Id.* We stated that "[a] party is not a consumer when it

merely arranges for a service to be provided to its customers, even if the party indirectly benefits

from the provision of that service." *Id.* The benefits to the lessor were "at best indirect" and therefore

were not sufficient to make the lessor a consumer of "services" under the Deceptive Trade Practices

Act. *Id.* at 925–26.

Here, as in *Coinmach*, Church & Akin provided its marina services not to its landlord but to

its landlord's customers. Although the landlord indirectly benefitted from the provision of these

services, Church & Akin was not contractually obligated to operate the marina for the Water District.

When the Water District decided to stop operating the marina, it could have elected to contract with

a company to manage the marina for it. In the same way, the owner of the apartment complex in

*Coinmach* could have contracted with a company to operate the owner's laundry rooms. But in both

cases, the owners elected instead to lease the premises, and the lessees did not agree to provide

services to the lessor.[8] At least in this context, the distinction between the terms of such a services

agreement and the terms of a lease agreement is not simply a matter of form over substance: under

chapter 271, the terms of the written agreement are themselves the substance that determines whether

immunity is waived. Unless the written contract includes the essential terms of an agreement to

provide goods or services to the governmental entity, the waiver of immunity does not apply.

---

[8] The dissent overlooks this important distinction when it suggests that this lease constitutes an agreement to provide services "[j]ust as" a contractor's agreement to build roads or bridges for a governmental entity constitutes an agreement to provide services. *Ante* at ___ (citing *Kirby Lake*, 320 S.W.3d at 839). If Church & Akin had not leased the premises but had instead agreed to serve as the Water District's contractor to operate the marina for the Water District, the result in this case would be different and chapter 271 would waive the Water District's immunity. By contrast, if a road developer purchased or leased property from a governmental entity and operated its own road on that property, chapter 271 would not waive immunity, because the developer would not have agreed to provide a service to the governmental entity.

11

Finally, we note that when chapter 271 waives immunity for a contract claim, it limits a successful claimant's recovery to "the balance due and owed by the local governmental entity under the contract," plus attorney's fees and interest. TEX. LOC. GOV'T CODE § 271.153(a)(1)(3). Construing section 271.152's waiver of immunity with section 271.153(a)'s limitation on damages to which the waiver applies, the waiver will typically apply only to contracts in which the governmental entity agrees to pay the claimant for the goods or services that the claimant agrees to provide to the governmental entity. This lease agreement contains no terms in which the Water District agreed to pay Church & Akin any amount for its services, so there is no amount that is "due and owed [from the Water District to Church & Akin] under the contract." Instead, Church & Akin agreed to pay the Water District for a leasehold interest in the property. While a party may agree to provide goods or services in exchange for something other than payment, the absence of any agreement by the governmental entity to pay for goods or services may indicate that the claimant did not in fact agree to provide goods or services to the governmental entity. Such is the case here. The fact that the Water District did not agree to pay Church & Akin for services supports our conclusion that Church & Akin did not agree to provide services to the Water District.

We agree with Church & Akin that the term "services" is broad and encompasses a wide array of activities, including activities such as the operation of a marina. *See Kirby Lake*, 320 S.W.3d at 839. But the contract did not require Church & Akin to provide marina-operation services. And at best, the operation of the marina only indirectly benefited the Water District. *See id.* (citing *Berkman* as distinguishing "indirect, attenuated" services); *Coinmach Corp.*, 417 S.W.3d at 925 (discussing indirect services under a lease). For these reasons, we cannot conclude that the lease's

restriction on Church & Akin's "use" of the premises stated, in writing, "the essential terms of [an] agreement for providing [marina-operating] services to the [Water District]." *See* TEX. LOC. GOV'T CODE § 271.151(2)(A).

**B.      Catering Tickets**

The lease's "use" clause also states: "The marina will issue catering tickets that will be redeemed at the gate for admittance to the lake. These tickets will be redeemed by the marina at the price of $1.00 each. They will only be available to persons coming into the marina." Although Church & Akin did not rely on this language in the trial court or the court of appeals, it argues here that this provision required Church & Akin to provide a service to the Water District by "issuing catering tickets." The Water District responds that Church & Akin "completely misconstrues the catering ticket provision," which provides for a contractual benefit to Church & Akin, not a contractual obligation that Church & Akin assumed. The dissent agrees with Church & Akin, but we disagree for at least two reasons. First, their position is based on a construction of the catering-ticket language that neither the agreement's language nor the record supports. And second, even accepting Church & Akin's assertions about how the catering tickets worked, the lease does not state "the essential terms of [an] agreement for providing [catering-ticket] services to the [Water District]." *See* TEX. LOC. GOV'T CODE § 271.151(2)(A).

The Water District had the burden, in its plea to the jurisdiction, to establish that it is a governmental entity entitled to governmental immunity. Once it satisfied that burden, the burden shifted to Church & Akin to establish, or at least raise a fact issue on, a waiver of immunity. *See City of Corsicana v. Stewart*, 249 S.W.3d 412, 413 (Tex. 2008) (considering whether "claimants met their

evidentiary burden of showing" waiver of immunity under the Texas Tort Claims Act); *Tex. Parks & Wildlife Dep't v. E.E. Lowrey Realty, Ltd.*, 235 S.W.3d 692, 694 (Tex. 2007) (holding that claimant failed to meet its burden of showing a waiver of sovereign immunity). Although Church & Akin asserted a waiver of immunity under chapter 271, it did not rely on the catering-ticket provision in the trial court or the court of appeals and, in fact, never mentioned this provision in its response to the Water District's plea to the jurisdiction or in its court-of-appeals briefing. As a result, the record contains very little evidence relating to catering tickets or how they worked.[9]

Church & Akin's counsel contended at oral argument that this provision's references to "the marina" are references to Church & Akin. Based on that contention, she asserted that Church & Akin would issue catering tickets to persons who visited the marina; the Water District would "redeem" these tickets at the gate to allow the person entry to the lake; and Church & Akin would then "redeem" the tickets from the Water District for $1 each, so that the Water District would receive $1 for each ticket-holder's entrance instead of the $6 that it otherwise charged at that time. Although the actual meaning of this provision seems less than clear, even accepting Church & Akin's explanation we cannot construe it to constitute an agreement by Church & Akin to provide a service

---

[9] The only evidence we have located in the record relating to catering tickets is in the deposition testimony of Tommy Fisher, a member of the Water District's board of directors. This testimony indicates that the parties had a separate dispute over the Water District's demand that the marina stop selling something called "marina bucks." Apparently, Church & Akin contended that "marina bucks" were the same thing as "catering tickets," and that the lease's catering-tickets provision permitted the marina to issue them. Fisher testified that "[t]he catering ticket is not the same thing as a marina buck," that the catering tickets were "for parties and things that [Church & Akin] would cater at the lake," that Church & Akin would "give them out personally" when it catered events, and that "they could be redeemed at the front gate." Fisher's deposition testimony does not support Church & Akin's contention that the catering-ticket provision obligated Church & Akin to provide a service to the Water District. To the contrary, it indicates that the catering-ticket provision provided a contractual benefit to Church & Akin, and the parties disputed whether that benefit include the right to sell "marina bucks." This evidence is certainly not conclusive, but Church & Akin did not put forward any contradicting evidence.

14

*to the Water District*. To the contrary, the catering tickets appear—from Church & Akin's own contentions about how the tickets would be handled—to be a benefit that Church & Akin "will" give to its marina customers to promote its own business.[10]

Church & Akin contends that the catering tickets would benefit the Water District as well as Church & Akin because the issuance of the tickets would potentially increase the amount of marina sales and thus also increase the amount that Church & Akin must pay to the Water District as rent. But there is nothing in the lease language or in the record to support the contention that the tickets would, were intended to, or in fact did increase traffic. Nor does the lease or the record substantiate the implication that any such increase would benefit the Water District, particularly considering that (at least, under Church & Akin's explanation) the Water District took a $5 loss on each person who accessed the lake with a catering ticket. And even to the extent the tickets may have increased marina sales, any indirect benefit to the Water District from Church & Akins increased profits could not, alone, convert Church & Akin's efforts to promote its own business into services *to the Water District*. *Cf. Kirby Lake*, 320 S.W.3d at 839.

---

[10] The dissent acknowledges that the word "will" has "many possible meanings" depending on the context, but determines that the context here indicates a promise to provide a "ticketing service." *Post* at __. Actually, the contract makes no reference to any "ticketing service." It only references "catering tickets," which Church & Akin contends it had a right under the lease to sell to its patrons. And as we have explained, the record does not tell us much about the context of the "catering tickets" provision because Church & Akin never argued it expressed a promise in the courts below. So for context we can only look to the contract itself, and consider Church & Akin's assertions about the provision's meaning. For the reasons we explain, the contract, taken as a whole, indicates that the parties expected Church & Akin to operate a marina on the leased premises, and they restricted Church & Akin's ability to use the premises for any other purposes, but they did not contractually require Church & Akin to operate a marina on the premises. Under Church & Akin's own explanation, the catering tickets provision gave it the right to sell "catering tickets" to its patrons and obligated the Water District to admit ticket-bearing patrons without paying the usual access fee. Within this context, we read the provision as expressing the parties' acknowledgment of Church & Akin's intent to issue tickets, not as a contractual promise to do so.

15

Church & Akin also asserts that the catering-tickets provision is evidence that the lease *required* Church & Akin to operate a marina. According to Church & Akin,

> If [Church & Akin] simply declined to open its doors to the Buffalo Springs community, then no persons could enter the marina and purchase catering tickets. Further, the Lease Agreement specifically mandated that the catering tickets could *only* be redeemed at the marina. Therefore, no catering tickets could be issued or redeemed at all if [Church & Akin] did not open the marina to allow persons to enter.

We agree that Church & Akin would not have been able to sell or "issue" catering tickets if it did not operate the marina, because the lease only permitted catering tickets for "persons coming into the marina." But we disagree that the catering-ticket language created an implied duty to operate the marina. Since the purpose of the catering tickets was to benefit Church & Akin's marina business, and the lease did not require Church & Akin to operate the marina, we cannot construe the provision that states that the marina "will issue catering tickets" as an agreement not only to issue catering tickets but also to operate the marina. Rather, we read this provision of the agreement as the parties' acknowledgement that Church & Akin intended to and could issue marina tickets for the benefit of its business, not as agreement to issue such tickets as a service to the Water District.

Moreover, even if we read the catering-ticket provision to constitute a contractual agreement by Church & Akin to "issue catering tickets," the contract does not state the "essential terms" of that agreement. TEX. LOC. GOV'T CODE § 271.151(2)(A) (providing that a contract waives immunity only if it states "*the essential terms* of the agreement for providing goods or services to the local governmental entity") (emphasis added). The lease provides no requirements as to how many catering tickets Church & Akin must issue, when it must issue them, to whom it must issue them,

16

or any other details necessary to make the issuance of catering tickets an enforceable agreement by Church & Akin.[11]

We thus cannot conclude that the lease's catering-ticket language stated, in writing, "the essential terms of [an] agreement for providing [catering-ticket] services to the [Water District]." *See* TEX. LOC. GOV'T CODE § 271.151(2)(A).

## C.      Profit-based Rent

Finally, Church & Akin argues that its agreement to pay rent in the amount of 5% of its gross revenue for sales of products other than gasoline represents an agreement to provide services to the Water District and further supports its contention that the lease required it to operate a marina. Again, we disagree. The rent provision requires that Church & Akin pay the Water District 5% of its non-gas sales proceeds. But it does not require that Church & Akin have any sales proceeds. If Church & Akin had $0 in sales for the year, payment of only the $3,000 base-rent would satisfy its contractual obligation. *See, e.g.*, *Weil*, 281 S.W.2d at 655.

---

[11] The dissent disagrees, concluding that the lease "tells Church & Akin everything it needs to know" about the catering tickets, including "what is to be provided, for how much, and to whom." But the dissent does not explain how Church & Akin was to perform such "ticketing service."

The lease indicates that the marina "will issue" catering tickets, but Church & Akin contends it was entitled to "sell" the tickets. Was Church & Akin obligated to give out tickets to marina visitors to encourage them to visit the lake area, as the dissent contends, or could it sell the tickets for a profit as Church & Akin contends?

The lease states that the marina will "redeem" the catering tickets for $1, which Church & Akin asserts is the price it was to pay the Water District for each catering ticket used for gate access. If the lease requires Church & Akin to sell catering tickets, as it contends, at what price must it sell them? Can it sell them for $6 (the usual cost of gate access, according to Church & Akin), such that the patron receives no benefit and the only effect is that the patron pays $6 to Church & Akin rather than $6 to the Water District?

The lease provides no minimum, maximum, or other parameters on quantity. Could Church & Akin issue one catering ticket during the lease's three-year term and satisfy its supposed obligation?

Absent such specifics, the provision lacks the essential terms that would be necessary to create an enforceable contractual agreement to provide a ticket-issuing service to the Water District.

Like this lease, the lease in *Weil* restricted use of the leased premises to a particular purpose (a retail store) and required the lessee to pay the lessor base-rent of $650 per month plus 5% of its sales proceeds, less the base-rent. *Id.* at 653. The lessee never opened the store on the premises and the lessor sued, arguing that the lease obligated the lessee to operate a store on the premises and that it was due damages for the absence of sales proceeds. *Id.* As discussed above, the court disagreed, holding that a lease provision that restricts use of the leased premises to a certain purpose "imports no obligation on the part of the lessee to use or continue to use the premises for that purpose." *Id.* at 654 (quoting *Dickey v. Phila. Minit-Man Corp.*, 105 A.2d 580, 581 (Pa. 1954)). The court reached that conclusion in spite of the lease's payment requirement, observing that even if it were to hold that the lease required operation of a store on the premises, it could not imply some minimum amount of sales proceeds that the lessee would have to generate. *Id.* at 655–56. We adopted this holding in *Universal Health Services* and relied on it to hold that a contract that restricted Universal's use of the premises to operation of a hospital and required Universal to obtain related permits and insurance agreements nevertheless did not obligate Universal to operate a hospital on the premises. 121 S.W.3d at 747. For the same reasons, we conclude that Church & Akin's agreement to pay the Water District 5% of its sales revenue does not constitute an agreement to generate sales revenue, operate a marina, or provide other services to the Water District.

## III.
## Conclusion

Having determined that the parties' lease does not include an "agreement for providing services to the [Water District]," we hold that chapter 271 of the Local Governmental Code does not

waive the Water District's immunity against Church & Akin's breach of contract claims. We reverse the portion of the court of appeals' judgment with respect to those claims, the only claims remaining in the suit, and dismiss them for lack of jurisdiction

_____

Jeffrey S. Boyd
Justice

Opinion delivered: July 3, 2014