

# NUMBER 13-22-00568-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

CAMERON COUNTY JUDGE
EDDIE TREVINO, IN HIS
OFFICAL CAPACITY, AND
CAMERON COUNTY,                                                    Appellants,

v.

THOMAS R. TEPPER,                                                    Appellee.

On appeal from the 357th District Court
of Cameron County, Texas.

# MEMORANDUM OPINION

Before Justices Tijerina, Silva, and Peña
Memorandum Opinion by Justice Silva

Appellants Cameron County Judge Eddie Trevino, in his official capacity, and

Cameron County (the County) appeal the trial court's denial of their plea to the jurisdiction

seeking to dismiss appellee Thomas R. Tepper's inverse condemnation suit. By three issues, appellants argue the trial court erred by denying its plea because: (1) Tepper, representing a joint venture of which he is a member, has no authority or license to practice law and thus lacks standing; (2) Tepper's claim is not ripe; and (3) Tepper failed to properly plead a takings claim. We reverse and render.

## I.     BACKGROUND

The facts recited herein are derived primarily from Tepper's original and amended petitions. Tepper owns three lots, 6, 7, and 8, which sit between Park Road 100 and the Gulf of Mexico in Cameron County.[1] In 1994, the County implemented a shoreline buffer program which created a building setback line 240 feet landward of the line of vegetation (LOV).[2] However, in 2006, the County amended its buffer program to eliminate the 240-foot setback so that the setback and LOV were the same. The amended building setback allowed for "maximum seaward development," prompting Tepper to plan to build two 10-unit condominiums: one on lot 7 and one on lot 8.

In 2019, the County enacted an erosion response plan (ERP) that re-established a setback line 230 feet landward of the LOV and created a dune conservation zone (DCZ) in the 230 feet between the setback line and the public beach. The DCZ called for the

---

[1] Tepper's original petition alleged that the lots were "owned by a four[-]member Joint Venture," consisting of Tepper, Karen Tepper, Ed Snearley, and Rhonda Snearley. Tepper was the only plaintiff in the original petition. An amended petition was filed, changing the plaintiff to the joint venture, identified as "Tom Tepper and, wife, Karen Tepper, and Ed Snearley and wife, Rhonda Snearley, under Joint Venture Development and Loan Agreement dated October 22, 2010." A subsequent amendment changed the plaintiff back to Tepper, individually. Additionally, the amendment included an attached warranty deed transferring the lots to Tepper, individually.

[2] "'Line of vegetation' means the extreme seaward boundary of natural vegetation which spreads continuously inland." TEX. NAT. RES. CODE ANN. § 61.001(5).

construction of a 200-foot-wide by 16-foot-high storm dune and a 30-foot-wide buffer zone. Because Tepper submitted proof of his intent to build prior to the 2019 amendments, he was grandfathered in to build based on the 2006 setback line. However, Tepper alleged that the ERP places any structure within the DCZ "in harm's way" of breaches, wash over, and flooding.[3]

Tepper ultimately received a permit to build both 10-unit condominiums as well as a protective dune. However, Tepper continued to allege that the County's ERP would cause flooding on his lots and thus "deny[] all economically viable use." According to Tepper's first amended petition, "[t]he 230 [foot]. building setback line, DCZ, and Storm Dune Ridge do not nor are they intended to protect habitable structures that will be built seaward of the 230 [foot] building setback line." Tepper alleged that the County should instead enact a "Static Position Shoreline Program" that "would have promoted maximum-seaward development by current landowners at the expense of future landowners and the public." Tepper claimed that the "County knew from the findings of its own engineers and consultants that habitable structures built seaward of the ERP's 230 [foot] building setback line and within the DCZ would be at risk of flooding and potential damage from storm surge and storm waves."

Appellants filed an original answer and plea to the jurisdiction. In their initial plea to the jurisdiction, appellants challenged the ripeness of Tepper's claims, alleging that he "ha[d] not actually even effectively attempted to submit a complete application, obtain a

---

[3] In the ERP, the County found that "FEMA [Federal Emergency Management Agency] has determined that in coastal high hazard areas, including the area seaward of the building setback line, there is a 26% chance that structures built in this area will be damaged by a 100-year storm over the typical 30-year life of a home mortgage."

permit[,] or been denied." Moreover, appellants asserted that Tepper's claims rested on "potentialities or events that may happen." In a supplement to the plea to the jurisdiction, appellants challenged the trial court's jurisdiction based on Tepper's action for declaratory judgment, alleging that it was an improper application of a declaratory judgment action for which they retained immunity. Additionally, appellants argued that the ERP is not applicable to Tepper because he would be grandfathered in under the prior plan and thus able to obtain the necessary permits to build. Appellants contended that their decision to implement a shoreline buffer plan rather than a shoreline stabilization program is at their sole discretion and that Tepper did "not present any facts that [the County] has intentionally chose[n] the former as an intentional act against [him]." Appellants also argued that the deeds to the lots included statutorily required warnings regarding coastal real property, which put Tepper on notice of the risks involved with purchasing the property. *See* TEX. NAT. RES. CODE ANN. § 61.025.

The trial court heard appellants' plea and ordered Tepper to amend his petition to include the proper parties as plaintiffs, including affidavits showing the remaining members to the joint venture's assignment of rights, remove the declaratory judgment action, and plead a proper inverse condemnation cause of action.

In a second supplement to the plea to the jurisdiction, appellants re-urged the plea to the jurisdiction, arguing that Tepper's amended petitions failed to cure the defects associated with his original petition. At a hearing on the plea to the jurisdiction, the trial court determined that Tepper had not properly pleaded an inverse condemnation claim that would waive immunity but denied the plea to the jurisdiction, instead allowing Tepper

4

an opportunity to amend his petition. Tepper subsequently filed an amendment to his petition to make him the sole plaintiff and attached a general warranty deed transferring the property from the joint venture to Tepper individually. Tepper did not amend his pleadings that constitute the basis of his inverse condemnation claim. This appeal followed.

## II. STANDARD OF REVIEW

"Local governmental entities 'enjoy governmental immunity from suit, unless immunity is expressly waived.'" *Lubbock Cnty. Water Control & Imp. Dist. V. Church & Akin, L.L.C.*, 442 S.W.3d 297, 300 (Tex. 2014) (quoting *Kirby Lake Dev., Ltd. V. Clear Lake City Water Auth.*, 320 S.W.3d 829, 836 (Tex. 2010)). "Governmental immunity includes both immunity from liability, 'which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether.'" *Id.* If a local governmental entity enjoys governmental immunity, the trial court does not have subject matter jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004).

A plea to the jurisdiction Is a dilatory plea used "to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's subject matter jurisdiction over a pleaded cause of action. *Miranda*, 133 S.W.3d at 226. "When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Id.* We will liberally construe the pleadings and look to the pleader's intent. *Id.* When the

5

determinative facts are undisputed, we review the trial court's ruling on a plea to the jurisdiction de novo. *Id.* The plaintiff carries the initial burden to plead facts affirmatively showing that the trial court has jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). "If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court[']s jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend." *Miranda*, 133 S.W.3d at 226–27 (citing *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002)). "If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend." *Id.* at 227 (citing *Brown*, 80 S.W.3d at 555).

### III.    APPLICABLE LAW

When a governmental unit takes property from a private party for the use of the public, it must compensate the private party for the taking. U.S. CONST. amends. V, IV; TEX. CONST. art. I, § 17. "When regulation of private property reaches a certain magnitude, there must be an exercise of eminent domain and compensation to sustain the act." *City of Houston v. Carlson*, 451 S.W.3d 828, 831 (Tex. 2014) (cleaned up) (quoting *Pa. Coal Co. v. Mahon*, 260 U.S. 393, 413, (1922)). If a property owner believes that a regulation requires compensation, they may seek redress through an inverse condemnation claim. *Id.* To plead inverse condemnation, a plaintiff must allege an intentional government act that resulted in the uncompensated taking of private property. *Id.*

"It is well settled that the Texas Constitution waives government immunity with

respect to inverse-condemnation claims." *Id.* at 830. However, "[i]n the absence of a properly [pleaded] takings claim, the state retains immunity." *Id.* "Only affirmative conduct by the government will support a takings claim" and the "government cannot be liable for a taking if 'it committed no intentional acts.'" *Harris Cnty. Flood Control Dist. v. Kerr*, 499 S.W.3d 793, 799, 800 (Tex. 2016) (quoting *City of Tyler v. Likes*, 962 S.W.2d 489, 505 (Tex. 1997)). Moreover, the governmental entity must know that a specific act is causing identifiable harm or know that the harm is substantially certain to result. *Id.* at 799. Stated more clearly, "the government must know that a specific act is causing identifiable harm or know that specific property damage is substantially certain to result from an authorized government action." *Id.* at 800 (cleaned up).

## IV. ANALYSIS

Because it is dispositive, we address appellants' third issue first: that Tepper failed to properly plead an inverse condemnation claim such that immunity was waived. Specifically, appellants argue that Tepper did not plead that appellants engaged in an intentional governmental act with knowledge that the complained-of harm would be substantially certain to follow, that they were required to utilize a shoreline stabilization program, or that their actions were for public use.

Tepper's pleadings are not entirely clear on what actions by the County resulted in a taking of his property. Broadly, Tepper claims that the County's ERP will place his property in harm's way of flooding and shoreline erosion. Thus, at first glance, it appears Tepper is claiming that the ERP will cause the flooding. However, Tepper's arguments and evidence support a different conclusion: the County's ERP fails to prevent shoreline

erosion and coastal flooding in a way that would protect his property, if built. For example, Tepper's first amendment to his petition states:

> While [Tepper] was aware of the risk of purchasing coastal real property near the beach, [Tepper] was also aware of and relied on (1) the County's mandate by the state to protect its coastal community from flood damage, (2) the County's commitment under its Beach Access and Dune Protection Plan to protect its coastal community from flood damage, (3) the County's commitment under its Beach Access and Dune Protection Plan to maintain and enhance the integrity of the beach/dune system, and (4) the County's mandate under the Open Beach Act to maintain and enhance the integrity of the beach/dune system; Lot 7 being part of the County's coastal community and beach/dune system.
>
> . . . .
>
> Under the ERP the County's mandate and commitment to protect Lot 7 from flood damage and the County's mandate and commitment to maintain and enhance the integrity of the beach/dune system are missing with regard to Lot 7; with two out of the three elements missing, the ERP has put Lot 7 . . . . in harm's way and caused Lot 7 to be economically unusable.
>
> While a Static Position Shoreline Program would have been costly for the County to enact and maintain and while a Static Position Shoreline Program would have promoted maximum-seaward development by current landowners at the expense of future landowners and the public; it was and is still possible for the County to enact a Static Position Shoreline Program. The City of South Padre Island enacted and has been maintaining a successful Static Position Shoreline Program since 1997.
>
> The County could have enacted a Static Position Shoreline Program[] but chose not to. The County chose instead to protect the majority of landowners, the public, and itself at the expense of the Plaintiff.

Thus, Tepper's claim does not rest on an affirmative intentional action; rather, it rests on the County's failure to implement a specific plan that would protect his future investment. Such a claim does not support a taking by inverse condemnation. *See Kerr*, 499 S.W.3d at 799–800. The facts here are similar to, yet more compellingly illustrative of a non-takings claim than, those in *Kerr. See id.* at 795–97. In *Kerr*, the plaintiffs alleged

8

that the Harris County Flood Control District engaged in a taking through its approval of unmitigated upstream development and failure to implement a specific flood control plan. *See id.* The court ultimately concluded that the complained-of actions did not support a takings claim because, among other reasons, there was no "conscious decision to damage certain private property for a public use." *See id.* at 806. Similarly, the appellants here did not make a "conscious decision to damage certain private property for a public use."[4] *See id.* Moreover, the potential flooding that Tepper faces is not "necessarily an incident to, or necessarily a consequential result of" the ERP. *See City of Dallas v. Jennings*, 142 S.W.3d 310, 314 (Tex. 2004).

Because appellants' actions as pleaded cannot serve as the basis of a takings claim, Tepper has failed to properly plead a takings claim. *See Carlson*, 451 S.W.3d at 830. Absent a properly pleaded takings claim, appellants' immunity is not waived. *See id.* Moreover, Tepper's pleadings affirmatively negate a takings claim. *See Miranda*, 133 S.W.3d at 226–27. Accordingly, the trial court erred by denying appellants' plea to the jurisdiction. *See id.*; *Miranda*, 133 S.W.3d at 225–26. We sustain appellants' third issue.

## V. CONCLUSION

We reverse the trial court's judgment.

CLARISSA SILVA
Justice

Delivered and filed on the
26th day of October, 2023.

---

[4] We note that Tepper's property has not yet been damaged. Moreover, whether the damage is substantially likely to occur is dubious—FEMA found that there is a 26% chance that some properties in the DCZ could experience flooding in the next thirty years. *See City of Dallas v. Jennings*, 142 S.W.3d 310, 314 (Tex. 2004) (holding that a taking may occur where the government knows that specific damage is *substantially certain* to result from its conduct).