**Reversed and Rendered and Memorandum Opinion filed January 28, 2025.**



In The

# Fifteenth Court of Appeals

## NO. 15-24-00065-CV

## CITY OF RIO VISTA, Appellant

## V.

## JOHNSON COUNTY SPECIAL UTILITY DISTRICT, Appellee

**On Appeal from the 413th Judicial District**
**Johnson County, Texas**
**Trial Court Cause No. DC-C202200601**

## MEMORANDUM OPINION

This is an interlocutory appeal from the trial court's order denying the City of Rio Vista's plea to the jurisdiction. The Johnson County Special Utility District sued the City for breach of a contract settling water service boundary disputes between the parties. The City argues, among other things, that the contract does not waive the City's immunity because it is not a contract "stating the essential terms of the agreement for providing goods or services" to the City. Tex. Loc. Gov't Code § 271.151(2)(A). We agree that the parties' agreement does not fall

within the scope of Section 271.152's waiver of immunity. We therefore reverse the trial court's order and render judgment dismissing the District's claims.[1]

## I. BACKGROUND

The City and the District are "retail public utilities." Tex. Water Code § 13.002(19). As required under the Water Code, each has a Certificate of Convenience of Necessity ("CCN"). Tex. Water Code § 13.242(a). A CCN is a certificate issued by the Public Utility Commission that gives a retail public utility the right to provide water services to a certain geographically designated area. In 2005, a dispute arose between the parties when the City installed water-service lines within the boundaries of the District's CCN. To avoid litigation and a contested hearing before an administrative agency, the parties entered into an Interlocal Agreement under Chapter 791 of the Texas Government Code to settle boundary disputes.

Many years after executing the Interlocal Agreement, the City annexed land that was part of a residential development known as Morgan Acres. The District's CCN included, and the District previously serviced, the area where Morgan Acres was being developed. According to the District, the City told Morgan Acres that the City could provide water service to Morgan Acres because it had water-service lines surrounding the property. The only way that would be possible, the District alleges, is if the City installed those lines without the PUC's approval and in violation of the Interlocal Agreement.

The District sued the City claiming the City breached the Interlocal Agreement by installing water-service lines near Morgan Acres and within the

---

[1] Because we conclude the City's governmental immunity from suit is not waived, we do not address the City's arguments that the Public Utility Commission has exclusive jurisdiction over the gravamen of the District's claims. *See* Tex. R. App. 47.1.

District's CCN.[2]   The District alleges that the City "utilized an emergency connection provision of the Interlocal Agreement to calculate its water capacity to attempt to demonstrate that the [C]ity had capacity to take on services of the new development. The emergency connection was not a regular source of water for the [C]ity and the connection has long been disconnected and abandoned."   The District also alleges the City "is utilizing the prior [District] emergency connection agreement that has previously been terminated, to calculate its capacity to serve the Morgan Acres development."

The District further seeks declarations under the Uniform Declaratory Judgments Act that (1) the emergency connection provisions of the Interlocal Agreement are of no further force or effect and (2) the City's waterline extension within the District's CCN is a material breach of the Interlocal Agreement. The petition asserts that the City's governmental immunity is waived because the parties' Interlocal Agreement is subject to Chapter 271 of the Texas Local Government Code. The petition further claims the City's immunity is waived under Chapter 37 of the Texas Civil Practice and Remedies Code.

The City filed a plea to the jurisdiction contending the City has not waived its governmental immunity from suit and that the PUC has exclusive jurisdiction over the District's claims. In response, the District argued that its breach of contract case is not subject to the PUC's exclusive jurisdiction and that the City waived immunity by executing the Interlocal Agreement. After a hearing, the trial court denied the City's plea to the jurisdiction. This interlocutory appeal followed.

---

[2] In a parallel, separate proceeding, the District also filed a cease and desist petition with the PUC to enforce its rights under its CCN.

3

## II.   STANDARD OF REVIEW

Governmental immunity from suit defeats a trial court's jurisdiction and thus is properly asserted in a plea to the jurisdiction. *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004) (citing *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004)). We review a trial court's ruling on a plea to the jurisdiction de novo. *Houston Belt & Terminal Ry. Co. v. City of Hous.,* 487 S.W.3d 154, 160 (Tex. 2016). In performing this review, we look to the plaintiff's petition to determine whether the facts pleaded affirmatively demonstrate that jurisdiction exists. *State v. Holland*, 221 S.W.3d 639, 642-43 (Tex. 2007). In making this assessment, we construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Id*. We may consider evidence that the parties have submitted and must do so when necessary to resolve the jurisdictional issue. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554-55 (Tex. 2000).

## III.   DISCUSSION

The District does not dispute that the City is a governmental unit entitled to immunity from suit. Absent an express waiver by the legislature, governmental immunity from suit deprives the courts of subject-matter jurisdiction. *Lubbock Cnty. Water Control & Improvement Dist. v. Church & Akin, L.L.C.*, 442 S.W.3d 297, 300 (Tex. 2014). Legislative waivers of immunity must be clear and unambiguous. Tex. Gov't Code § 311.034; *see also Tooke v. City of Mexia*, 197 S.W.3d 325, 333 (Tex. 2006). The District's sole basis for claiming waiver of the City's governmental immunity is that its agreement with the City waives the City's immunity under Chapter 271 of the Texas Local Government Code.

The first question we consider in this appeal is whether the District met its burden in establishing a statutory waiver of the City's immunity based on the

4

parties' contract.  We apply traditional principles of statutory interpretation to determine the scope of a statutory waiver of immunity.  *Campbellton Rd., Ltd. v. City of San Antonio by & through San Antonio Water Sys.*, 688 S.W.3d 105, 113 (Tex. 2024).  We further apply traditional contract interpretation principles to the extent this analysis requires us to interpret the parties' contract.  *Id.*

## A.      Local Government Code Chapter 271.

Chapter 271 of the Texas Local Government Code waives a local governmental entity's immunity from suit for certain contract suits.  Section 271.152 provides "[a] local governmental entity . . . that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of contract, subject to the terms and conditions of this subchapter."  Tex. Loc. Gov't Code § 271.152.

Here, the parties' dispute turns on whether the Interlocal Agreement is a "contract subject to this subchapter."  A "contract subject to this subchapter" means "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity."  *Id.* § 271.151(2)(A).[3]  The principal issue in this appeal is whether the Interlocal Agreement states "the essential terms . . . for providing . . . services to" the City.  *See id.*

Chapter 271 does not define "services."  The Texas Supreme Court has interpreted "services" in Section 271.151(2)(A) as "broad enough to encompass a wide array of activities."  *San Antonio River Auth. v. Austin Bridge & Rd., LP*, 601

---

[3] A "contract subject to this subchapter" also means "a written contract, including the right of first refusal, regarding the sale or delivery of not less than 1,000 acre-feet of reclaimed water by a local governmental entity intended for industrial use."  *Id.* § 271.151(2)(B).  This part of the definition is not at issue in this case.

S.W.3d 616, 628-29 (Tex. 2020) (citing *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 839 (Tex. 2010)); *see also Campbellton Rd.,* 688 S.W.3d at 122. This "includes generally any act performed for the benefit of another under some arrangement whereby such act was to have been performed." *Kirby Lake*, 320 S.W.3d at 839 (citing *Van Zandt v. Fort Worth Press*, 359 S.W.2d 893, 895 (Tex. 1962)). The services provided under the agreement need not be the "primary purpose" of the contract. *Church & Akin*, 42 S.W.3d at 302. But the services still "must provide more than a mere 'indirect, attenuated' benefit" to the local governmental entity. *Campbellton Rd.*, 688 S.W.3d at 122 (quoting *San Antonio River Auth.*, 601 S.W.3d at 629). "When a party has no right under a contract to receive services, the mere fact that it may receive services as a result of the contract is insufficient to invoke chapter 271's waiver of immunity." *Church & Akin*, 442 S.W.3d at 303 (concluding use-restriction provision in lease of marina did not provide a service); *see also Campbellton Rd.*, 688 S.W.3d at 119 (clarifying party need not have enforceable contractual right to services "at the time those terms are stated in the first instance").

**B.**     **Does the District provide the City a "service" under the Interlocal Agreement?**

The District argues that both (1) the emergency connection provision and (2) the notice and consent provision of the Interlocal Agreement qualify as "services" to the City. We disagree.

*Emergency Connection Provision*

We first address the District's argument that the emergency connection provision qualifies as a "service" to the City. The emergency connection provision states:

The District provides the City water for emergency needs through a 2" meter at JCSUD's standard rate as amended from time to time. The take-point connection, which has been in place for many years, ties directly to the City's distribution system. The finite supply source for this emergency use comes from the Districts' Plant 18 well site about 2 miles north on Hwy. 174 from the City. In order to improve flow-control and prevent the District's supply side outage, the City and the District will work together to plan for the necessary plumbing changes to update the take-point connection so that it feeds into the City's water storage facility.

We conclude that the District did not provide "services" to the City under this provision. As the second sentence states, an emergency connection has been in place "for many years." This provision does not promise any construction or water services; the only "benefit" stated is that the two parties "will work together to plan" for an updated connection in the future. Such an agreement is unenforceable under Chapter 271 because it lacks essential terms. *See* Tex Loc. Gov't Code § 271.151(2)(A); *Dallas/Fort Worth Int'l Airport Bd. v. Vizant Techs., LLC*, 576 S.W.3d 362, 371 (Tex. 2019).

The District's petition also supports this reading. For instance, the District alleges that the City "is utilizing the *prior* [District] emergency connection that has previously been terminated, to calculate its capacity to serve the Morgan Acres development." (emphasis added). The petition also explained that the "emergency connection was not a regular source of water for the city and the connection has long been disconnected and abandoned."

Accordingly, the emergency connection provision of the Interlocal Agreement is not an agreement for the District to provide "services" to the City.

*Notice and Consent Provision*

The District next argues that the notice and consent provision of the

7

Interlocal Agreement provides for a service. It states:

> If the District or City contemplates extending water line facilities within the exclusive CCN area of the other, that entity will first contact the CCN holder to review and discuss the development and/or construction plan. The encroaching entity will proceed with written consent only.

Without citing any support for its argument that this provision qualifies as a service to the City, the District argues this provision provided both parties benefits because following its provisions could avoid costly disputes and afford the opportunity to negotiate, work together, and formulate a mutually beneficial plan to present to the PUC. The City argues that the advance notice requirement is a fundamentally different concept than a "service" capable of waiving immunity under Chapter 271.

We agree with the City that the notice and consent provision does not qualify as a "service" as contemplated under Chapter 271. As an initial matter, the notice and consent provision applies equally to both parties, and therefore the notice requirement is not necessarily a service that the District provides to the City. *See* Tex. Loc. Gov't Code § 271.151(2)(A). Further, any advance notice the District would provide to the City if the District intends to install water lines in the City's CCN in the future is, at best, an attenuated, indirect benefit of the parties' agreement settling their 2005 boundary dispute. Such an indirect benefit is insufficient to waive immunity. *See Church & Akin,* 442 S.W.3d at 305 (concluding marina-operation services were at best indirect benefit to water district under lease that restricted use of property as marina); *see also Berkman v. City of Keene*, 311 S.W.3d 523, 527-28 (Tex. App.—Waco 2009, pet. denied) (op. on reh'g) (concluding expansion of city's tax base resulting from annexation petition was only indirect benefit of city's agreement to provide water services to property); *East Houston Est. Apartments, L.L.C. v. City of Houston*, 294 S.W.3d

723, 736 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (explaining that "[i]f every contract that confers some attenuated benefit on a governmental entity constitutes a contract for a 'service,' the limitation of contracts covered by section 271.152 . . . loses all meaning.").

As a result, the notice and consent provision cannot qualify as a service sufficient to waive the City's immunity under Chapter 271.

## C.   UDJA.

The District concedes that if the City's immunity is not waived under Chapter 271, then the UDJA cannot separately and independently waive the City's immunity.   It is correct that the UDJA is "not a general waiver of sovereign immunity." *Texas Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 388 (Tex. 2011); *see also Texas Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 856 (Tex. 2002).   The UDJA waives immunity only in particular cases, such as a challenge to the validity of an ordinance or a statute. *Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 622 (Tex. 2011) (per curiam).   Accordingly, the UDJA cannot independently waive the City's immunity from suit in this case.

## IV.   CONCLUSION

Having determined that the Interlocal Agreement does not state essential terms for providing services to the City, we hold that Chapter 271 does not waive the City's immunity from the District's breach of contract claims.   We therefore reverse the trial court's order denying the City's plea to the jurisdiction and render judgment, dismissing the District's claims for want of jurisdiction.

9

/s/ Scott K. Field

Scott K. Field
Justice

Panel consists of Chief Justice Brister and Justices Field and Farris.