

# NUMBER 13-18-00544-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**CAMERON COUNTY REGIONAL
MOBILITY AUTHORITY,**                                                          **Appellant,**

**v.**

**DAVID GARZA AND DIANE GARZA,**                                        **Appellees.**

---

On appeal from the 444th District Court
of Cameron County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Hinojosa
Memorandum Opinion by Justice Hinojosa**

Appellees David and Diane Garza (the Garzas) sued appellant, the Cameron County Regional Mobility Authority (CCRMA), asserting claims for inverse condemnation and breach of contract.[1]   CCRMA appeals the trial court's order denying its plea to the

---

[1] The Garzas also sued HNTB Corporation and Pete Sepulveda Jr., asserting various claims.

jurisdiction. In two issues, CCRMA argues the trial court erred in denying its plea because CCRMA is protected by governmental immunity from the Garzas' claims. We reverse, render in part, and remand in part for further proceedings.

## I.    BACKGROUND[2]

The West Rail Relocation Project, a joint project between CCRMA and other governmental and private entities, called for the relocation of railroad lines in Brownsville, Texas and Matamoros, Mexico. The United States Army Corps of Engineers (the COE) determined that the new lines would result in permanent impact to .39 acres of United States waters, including the Resaca del Rancho Viejo[3] and adjacent wetlands. As a prerequisite to the new construction, the COE required CCRMA to sponsor environmental mitigation activities to offset the project's environmental impact.

Due to the narrow, linear nature of the project, on-site mitigation efforts were not viable. Therefore, CCRMA pursued off-site mitigation opportunities through its retained engineer, HNTB Corporation (HNTB), and with the assistance of the Valley Land Fund (the VLF), a non-profit organization. CCRMA proposed to conduct mitigation activities on 1.17 acres of property owned by the Garzas, who were seeking to protect and safeguard the wetland ecosystem on their property. The proposed mitigation site was located within a portion of the Resaca del Rancho Viejo. The Garzas donated a

_____

However, those parties are not before us in this appeal.

[2] The following factual allegations are taken from the Garzas' live pleading and the exhibits attached thereto.

[3] "Resacas are former channels of the Rio Grande found in the southern half of Cameron County." Charles M. Robinson III, "*RESACAS,*" HANDBOOK OF TEX. ONLINE, http://www.tshaonline.org/handbook /online/articles/rbrnp (last visited Sept. 9, 2019). "They are naturally cut off from the river, having no inlet or outlet." *Id*.

"Permanent Conservation Easement" for the site to the VLF.

The COE approved CCRMA's mitigation plan and issued a permit authorizing construction of the new rail line.   The mitigation plan stated that representatives of the COE, the VLF, and HNTB previously visited the site and "verified sufficient water availability and the presence of invasive species to merit enhancement activities."   The required "enhancement activities" consisted of the "removal of invasive [plant] species and planting of desirable native wetland vegetation to supplement the existing wetland vegetation."   The plan provided for the following "success criteria":

> A plant survival survey will be completed 3 months following the completion of planting activities.   Planting will have been considered successful if 50% of the plantings have survived after 3 months.   If the target of 50% survival is not reached, then the mitigation site will be replanted to the original density.

> The success criteria for the mitigation site are as follows:   1) 75% or greater areal cover of desirable wetland vegetation with an indicator status of facultative (FAC) or wetter, and 2) less than 25% areal cover of invasive plant species.   The above stated success criteria will be monitored and maintained through the 5-year monitoring period as well as at the end of the 5-year period.

> Following the initial survival survey, the mitigation site will be monitored semi-annually for a minimum of 5 years, with monitoring visits conducted during the spring and fall seasons. . . .   [CCRMA] will submit monitoring reports within 30 days of the monitoring visit to the [COE]. . . .

> The mitigation requirement will be considered to be complete when the site has met the success criteria 5 years after the initial planting.   Should mitigation be determined to be unsuccessful by [COE] personnel at the end of the monitoring period, [CCRMA] will be required to take necessary corrective measures, as approved by the [COE].   Once the corrective measures are completed, [CCRMA] will notify the [COE] and a determination will be made regarding success of the mitigation.

3

CCRMA contracted with HNTB to carry out the work detailed in the mitigation plan and to prepare the required status reports.

In their petition, the Garzas allege they were third-party beneficiaries to the mitigation plan and CCRMA breached the plan by ignoring and failing to perform the required enhancement activities—the removal of invasive plant species and planting of native vegetation. They claim CCRMA's failure in this regard resulted in damage to the mitigation site and adjoining property, including the killing of fish, destruction of wildlife habitats, and damage to wetland vegetation. The Garzas further allege that CCRMA did not comply with the plan's reporting requirements. The Garzas claim that CCRMA's actions constituted a taking of their property without adequate compensation in violation of the Texas Constitution. Specifically, the Garzas allege that CCRMA failed to perform a number of actions which would have ensured the success of the mitigation project.[4]

CCRMA filed a plea to the jurisdiction,[5] challenging whether the Garzas' pleadings demonstrated the trial court's subject matter jurisdiction. In particular, CCRMA argued that the Garzas did not establish a valid inverse condemnation or breach of contract claim; therefore, CCRMA's governmental immunity remained intact. The Garzas filed a

---

[4] In particular, the Garzas allege that CCRMA took their property by failing to: perform due diligence with respect to selecting the site; perform or ensure the performance of adequate hydrology studies; perform or ensure the performance of adequate soil and water studies; secure a water/hydrology plan; provide water to the mitigation site; retain reputable and qualified contractors; properly monitor the actions taken by HNTB and the contractors; properly monitor the project; ensure proper removal of invasive species both within and outside the mitigation site; control the spreading of the invasive species; monitor the property outside the mitigation site to ensure that it was not damaged; and remedy the destruction and damage caused to the mitigation site when the mitigation plan was unsuccessful.

[5] CCRMA filed a pleading entitled "Cameron County Regional Mobility Authority's Second Amended Plea to the Jurisdiction, Motion to Dismiss, Special Exceptions, and Original Answer." Only the trial court's denial of the plea to the jurisdiction is at issue in this appeal.

response, CCRMA a reply, and the Garzas a sur-reply. Following a hearing, the trial court denied CCRMA's plea to the jurisdiction. This interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8).

## II.     STANDARD OF REVIEW

A plea to the jurisdiction is a dilatory plea; its purpose is "to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's subject matter jurisdiction over a pleaded cause of action. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). CCRMA's plea to the jurisdiction is based on governmental immunity.[6] Governmental immunity deprives a trial court of jurisdiction over lawsuits in which the State's political subdivisions have been sued, unless their immunity from suit is waived by the Legislature. *Id*.; *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012). Therefore, governmental immunity is properly asserted in a plea to the jurisdiction. *Miranda*, 133 S.W.3d at 225–26. Whether the trial court has subject matter jurisdiction is a question of law we review de novo. *Id*. at 226.

It is the plaintiff's burden to plead facts affirmatively demonstrating the trial court's subject matter jurisdiction. *Id*. When a plea to the jurisdiction challenges the pleadings, we determine if the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Id*. (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852

---

[6] Governmental immunity is a common law doctrine protecting governmental entities from suit, similar to sovereign immunity. *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57–58 (Tex. 2011). While sovereign immunity protects the State and its various agencies from suit, governmental immunity protects the State's political subdivisions from suit. *Id*. As a political subdivision of the state, CCRMA is generally protected from suit by governmental immunity. *See* TEX. TRANSP. CODE ANN. § 370.032(a).

5

S.W.2d 440, 446 (Tex. 1993)). We construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent. *Id*. If the pleadings do not contain sufficient facts to affirmatively demonstrate jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *Id*. at 226–27. If the pleadings affirmatively negate jurisdiction, then the plea may be granted without affording the plaintiff this opportunity. *Id*. at 227.

When a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider the relevant evidence submitted by the parties to determine if a fact issue exists. *Id*. A defendant challenging a jurisdictional fact must satisfy the same initial burden as in a "traditional" summary judgment, and judgment is proper in such instance only if the plaintiff cannot present controverting evidence raising a genuine issue of material fact. *Id*. at 227–28.

CCRMA's plea to the jurisdiction exclusively challenged whether the Garzas pleaded facts affirmatively demonstrating the trial court's subject-matter jurisdiction. The plea was not supported by evidence. However, CCRMA raises various evidentiary-based arguments for the first time on appeal.[7] While jurisdictional issues generally can be raised *sua sponte* or for the first time on appeal, a defendant appealing the denial of a plea to the jurisdiction may not urge an evidentiary challenge for the first time on appeal. *See Hendee v. Dewhurst*, 228 S.W.3d 354, 375 (Tex. App.—Austin 2007, pet. denied)

---

[7] For instance, CCRMA argues that the Garzas "failed to establish that any action taken by [CCRMA] caused any taking or damage to the property," citing evidence indicating that external factors caused the mitigation site to dry up.

(explaining that permitting a challenge to jurisdictional evidence to be raised for the first time on appeal would circumvent the procedural safeguards established by *Miranda*).

We also observe that CCRMA's evidentiary arguments cite primarily to the record associated with its no-evidence motion for summary judgment and the response thereto, which remain pending below. A trial court's subject-matter jurisdiction cannot be challenged in a no-evidence summary judgment motion because this practice improperly shifts the evidentiary burden to the plaintiff to fully marshal their evidence simply to establish jurisdiction. *Thornton v. Ne. Harris Cty. Mun. Util. Dist. 1*, 447 S.W.3d 23, 40 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Other record references relate to filings which are not relevant to the jurisdictional challenge, such as an exhibit attached to a response to a motion to exclude expert testimony. For these reasons, we limit our review to the adequacy of the Garzas' pleadings.

### III.   INVERSE CONDEMNATION

By its first issue, CCRMA argues that the Garzas' pleadings do not establish a cognizable inverse condemnation claim. As a result, CCRMA maintains that the Garzas' pleadings fail to affirmatively demonstrate a waiver of its immunity from suit.

### A.   Applicable Law

Article I, § 17 of the Texas Constitution waives governmental immunity for valid inverse condemnation claims. *Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001); *City of Dallas v. Blanton*, 200 S.W.3d 266, 271 (Tex. App.—Dallas 2006, no pet.). Inverse condemnation occurs when property is taken for public use without proper condemnation proceedings and the property owner attempts to

7

recover compensation for that taking. *Blanton*, 200 S.W.3d at 271 (citing *City of Abilene v. Burk Royalty Co.*, 470 S.W.2d 643, 646 (Tex. 1971)). An inverse condemnation may occur when a governmental entity physically appropriates or invades the property, or when it unreasonably interferes with the landowner's right to use and enjoy the property, such as by restricting access or denying a permit for development. *See Westgate, Ltd. v. State*, 843 S.W.2d 448, 452 (Tex. 1992).

To properly assert an inverse-condemnation claim against a governmental entity, a party must plead facts establishing the following elements: (1) the governmental entity intentionally performed an act in the exercise of its lawful authority; (2) that resulted in the taking, damaging, or destruction of the party's property; (3) for public use. *Little–Tex*, 39 S.W.3d at 598. Whether particular facts are sufficient to allege a constitutional taking is a question of law. *Id.*; *Blanton*, 200 S.W.3d at 272. A plaintiff must allege a valid inverse condemnation claim to demonstrate a waiver of a governmental entity's immunity from suit. *Blanton*, 200 S.W.3d at 272.

## B. Analysis

CCRMA argues that the Garzas' pleadings fail to establish that CCRMA intended to take the Garzas' property.

A governmental entity cannot be liable for a taking if it committed no intentional acts. *Harris Cty. Flood Control Dist. v. Kerr*, 499 S.W.3d 793, 800 (Tex. 2016). The Garzas' inverse-condemnation claim is premised entirely on allegations that CCRMA *failed to take* certain actions. *See supra* note 5. Many of the alleged failures concern actions required by the mitigation plan, such as removing invasive plant species or

8

planting native vegetation. Other allegations implicate CCRMA's failure to take actions that might have ensured the success of the mitigation project, but were not otherwise required by the plan, such as ensuring adequate hydrology studies for the site. The Garzas, however, allege no affirmative action by CCRMA that resulted in damage to their property. "Only affirmative conduct by the government will support a takings claim." *Kerr*, 499 S.W.3d at 799. In other words, governmental inaction is not enough. *City of Tyler v. Likes*, 962 S.W.2d 489, 505 (Tex. 1997); *City of Socorro v. Campos*, 510 S.W.3d 121, 127 (Tex. App.—El Paso 2016, pet. denied).

The Texas Supreme Court analyzed an alleged taking by government inaction in *Kerr*. 499 S.W.3d at 795. In that case, four hundred homeowners sued Harris County and the Harris County Flood Control District asserting a takings claim. *Id*. The homeowners alleged the flooding of their homes was caused by the County's approval of upstream development and its failure to fully implement a flood-control plan known as the Pate Plan, which the County approved, and authorized the District to implement, over fifteen years before the lawsuit was filed. *Id*. at 796–97. Regarding the County's failure to implement the Pate Plan, the Texas Supreme Court explained, "the law does not recognize takings liability for a failure to complete the Pate Plan, despite the homeowners' attempt to somehow bundle that inaction with the affirmative conduct of approving development." *Id*. at 800. The Court further stated, "Because inaction cannot give rise to a taking, we cannot consider any alleged failure to take further steps to control flooding, such as the failure to complete the Pate Plan." *Id*. at 805.

In the present case, the Garzas' inverse-condemnation claim rests entirely on CCRMA's alleged failure to do what was required by the mitigation plan or to take other actions which would have ensured the plan's success.[8] The Garzas do not allege an intentional act by CCRMA, a necessary element for their inverse condemnation claim. *See id.*; *see also Bell v. City of Dallas*, 146 S.W.3d 819, 825 (Tex. App.—Dallas 2004, no pet.) (concluding that the plaintiff's allegation that property was damaged by the city's failure to maintain and repair faulty pipes did not demonstrate a valid takings claim because it was based only on "negligent omissions"). Because an inverse-condemnation claim cannot be premised on governmental inaction, we conclude that the Garzas' pleadings fail to affirmatively demonstrate the trial court's jurisdiction. *See Miranda*, 133 S.W.3d at 226. We sustain CCRMA's first issue.

We must now decide whether the Garzas should be afforded an opportunity to amend their pleadings as to the takings claim. Generally, "'a plaintiff may stand on his pleadings in the face of a plea to the jurisdiction unless and until a court determines that the plea is meritorious.'" *Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007) (quoting lower court's opinion). Where, as here, a trial court denies a plea to the jurisdiction, but an appellate court holds that the plaintiff's pleadings are deficient, the plaintiff is entitled to a remand if the defects are curable. *Id*. at 839–40. We have concluded that the Garzas' pleadings do not allege sufficient facts to demonstrate a valid inverse-condemnation claim. However, the pleadings do not affirmatively demonstrate

---

[8] The Garzas maintain on appeal that CCRMA acted affirmatively in abandoning the mitigation project. However, such an allegation is simply another way of claiming that CCRMA failed to perform the actions required by the mitigation plan.

10

incurable defects in jurisdiction. Therefore, on remand, the trial court must afford the Garzas the opportunity to amend their pleadings. *See Miranda*, 133 S.W.3d at 226–27.

## IV. BREACH OF CONTRACT

By its second issue, CCRMA argues that the Garzas' pleadings do not establish the statutory waiver of immunity for breach-of-contract actions found in § 271.152 of the Texas Local Government Code.

## A. Applicable Law

Texas Local Government Code § 271.152 provides:

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

TEX. LOC. GOV'T CODE ANN. § 271.152. A "[c]ontract subject to this subchapter" is defined as: "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." *Id*. § 271.151(2)(A). According to its plain terms, the statute by clear and unambiguous language waives a governmental entity's immunity from suit for breach of a written contract. *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011). For a contract to be subject to § 271.152's waiver of immunity, the contract must: (1) be in writing, (2) state the essential terms of the agreement, (3) be for the provision of goods or services to the local governmental entity, and (4) be executed on behalf of the local governmental entity. *Id*. at 135.

11

**B.      Analysis**

We first address CCRMA's contention that the mitigation plan does not constitute a contract for "goods or services" as required to invoke the statutory waiver of immunity.[9] The Garzas respond that the mitigation plan was a contract for services because the plan provided CCRMA "a means by which CCRMA could compensate [the Garzas] for its disturbance of land in constructing its railroad."

Chapter 271 does not define "services," but the supreme court has interpreted the term in this context as "broad enough to encompass a wide array of activities." *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 839 (Tex. 2010); *City of Galveston v. CDM Smith, Inc.*, 470 S.W.3d 558, 566 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). "The term 'includes generally any act performed for the benefit of another under some arrangement or agreement whereby such act was to have been performed.'" *Lubbock Cty. Water Control & Improvement Dist. v. Church & Akin, L.L.C.*, 442 S.W.3d 297, 303 (Tex. 2014) (quoting *Kirby Lake*, 320 S.W.3d at 839). In other words, "there must be some obligation to perform." *Kirby Lake*, 320 S.W.3d at 839. Further, the services must be provided directly to the governmental entity. *See id.* at 838. The waiver of immunity does not extend to contracts in which the governmental entity received only an indirect, attenuated benefit. *Church & Akin*, 442 S.W.3d at 303 (citing *Kirby Lake*, 320 S.W.3d at 839).

---

[9] We assume arguendo that the Garzas are third-party beneficiaries to the mitigation plan. *See Galveston Indep. Sch. Dist. v. Clear Lake Rehabilitation Hosp., L.L.C.*, 324 S.W.3d 802, 810 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("[W]hen a governmental entity and a contracting party enter into a contract subject to subchapter I and denominate a third-party beneficiary of that contract, the third-party beneficiary's claim for breach of contract falls within the waiver of immunity authorized under section 271.152.").

Here, the purported contract for goods or services is the mitigation plan. The plan, which is attached to the Garzas' pleadings, *see* TEX. R. CIV. P. 59, details the enhancement activities for which CCRMA is responsible. However, the plan contemplates no services which are to be provided *to* CCRMA. Furthermore, the plan contains no language supporting the Garzas' contention that it was intended as "a means by which CCRMA could compensate [the Garzas] for its disturbance of land in constructing its railroad." And even if the plan could be construed in such a way, the contract would still not require the provision of goods or services to CCRMA. To qualify as a contract under § 271.152, the plan must have given CCRMA a right to receive services because otherwise the benefits incidentally accruing to it would be too "indirect" and "attenuated" to bring the contract under the Act. *See Church & Akin*, 442 S.W.3d at 303; *Kirby Lake*, 320 S.W.3d at 839. Accordingly, we conclude that the mitigation plan does not constitute a contract for goods or services as contemplated by Chapter 271 of the local government code. *See Church & Akin*, 442 S.W.3d at 303 (holding that the plaintiff's operation of a marina on property leased from the county provided only an indirect benefit to the water district); *see also Partners Dewatering Int'l, L.C. v. City of Rio Hondo*, No. 13-13-00340-CV, 2015 WL 3637853, at *1–2 (Tex. App.—Corpus Christi–Edinburg June 11, 2015, pet. denied) (mem. op.) (holding that, where the contract allowing the plaintiff to operate a liquid dewatering facility on the premises of a city-owned wastewater-treatment plant also required plaintiff to construct a road on the city's premises to permit plaintiff's trucks to access facility, the road provided only an indirect and attenuated benefit to the city and did not waive immunity).

13

Unlike the defects for the Garzas' inverse-condemnation claim, the nature of the contract presents an incurable defect, which affirmatively negates jurisdiction. *See Richardson Hosp. Auth. v. Duru*, 387 S.W.3d 109, 113 (Tex. App.—Dallas 2012, no pet.) (concluding that the plaintiff's pleadings affirmatively negated jurisdiction where a breach of contract action was premised on an agreement by which the plaintiff received services from the governmental entity, but no services were provided to the governmental entity). Therefore, the trial court erred in not granting CCRMA's plea to the jurisdiction for this claim. *See Miranda*, 133 S.W.3d at 227. We sustain CCRMA's second issue.

## V. CONCLUSION

We reverse the trial court's order denying CCRMA's plea to the jurisdiction, render judgment dismissing the Garzas' breach-of-contract claim for want of subject matter jurisdiction, and remand the case to the trial court for further proceedings consistent with this memorandum opinion.

LETICIA HINOJOSA
Justice

Delivered and filed the
10th day of October, 2019.

14