In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-22-00092-CV

CITY OF AMES, TEXAS, Appellant

V.

CITY OF LIBERTY, TEXAS, Appellee

On Appeal from the 75th District Court
Liberty County, Texas
Trial Cause No. CV1813452

## MEMORANDUM OPINION

In this interlocutory accelerated appeal, Appellant the City of Ames appeals the trial court's denial of its plea to the jurisdiction based on governmental immunity. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8); (permitting interlocutory appeals from rulings on a governmental unit's plea to the jurisdiction); Tex. Loc. Gov't Code Ann. §§ 271.151-160 ("Chapter 271, Subchapter I" setting forth the requirements for the adjudication of claims arising under written contracts with local governmental entities). Because the contract at issue is covered by Chapter 271 and

governmental immunity for this matter has been waived as provided therein, we affirm.

Procedural History

Original Petition

On June 26, 2018, the City of Liberty ("Liberty" or "Appellee") as Plaintiff filed its Original Petition against Defendants City of Ames ("Appellant" or "Ames") and City of Hardin ("Hardin") (collectively "Defendants").[1] The petition alleged that Liberty owns and operates a wastewater collection system and treatment plant, that Liberty receives wastewater from its own collection system and it receives wastewater from Hardin and Ames, and that Liberty had separate wastewater disposal contracts with Hardin and Ames. The Liberty-Hardin contract was executed December 9, 2003, and the Liberty-Ames contract (the "Contract") was dated March 14, 2001.

According to Liberty, the contracts require Defendants to operate their respective wastewater collection systems in a way that complies with Liberty's plumbing code, ordinances, and standards, and the contracts also require the cities to prevent "Seepage and Infiltration" into the collection systems that flow to the Liberty wastewater treatment plant because the plant has finite capacity. Liberty

---

[1] The City of Hardin ("Hardin") is not a party to this appeal, and we discuss Hardin only as necessary.

alleged that Defendants had violated the contracts, which resulted in Liberty facing Texas Commission on Environmental Quality ("TCEQ") enforcement and that Defendants' "ongoing breaches" of the contracts subject Liberty to additional regulatory enforcement.

The Petition states that the contracts require Defendants to pay Service Charges for wastewater volumes that exceed Total Acceptable Volumes, and the contracts state each city's daily and monthly Total Acceptable Volume. Liberty alleged that Ames and Hardin had not paid Service Charges owed to Liberty, despite Liberty having sent demand letters. Liberty alleged that each contract was "a written contract for the provision of goods and services" for which the Legislature had waived immunity for the claims asserted, and it asserted a claim for breach of contract against Defendants. Liberty also sought costs and attorney's fees.

Ames's Plea to the Jurisdiction

Ames filed an Answer and Second Amended Answer asserting a general denial and various affirmative defenses and filed a Plea to the Jurisdiction. At the trial court and on appeal, Ames contends that Liberty failed to plead a valid waiver of governmental immunity and that immunity has not been waived for several reasons.

First, Ames argues that section 271.152 of the Texas Local Government Code applies to contract disputes between governmental entities and private parties, and

3

not to a dispute between governmental entities. Ames relies upon a quote from a Texas Supreme Court case wherein the Court stated that Subchapter I of Chapter 271 "is a framework for resolving contract disputes between governmental entities and private parties." *San Antonio River Auth. v. Austin Bridge & Rd., L.P.*, 601 S.W.3d 616, 623 (Tex. 2020) (hereinafter "*Austin Bridge*"). Ames argues that Subchapter I is not a framework for resolving disputes among cities relating to a contract between those cities.

Next, Ames contends the contract does not meet the requirements of the statute because the Contract is not a contract "for goods and services" under Chapter 271 but rather one for the performance of a governmental function governed by the Interlocal Cooperation Act under Chapter 791 of the Government Code. *See* Tex. Gov't Code Ann. §§ 791.001-.037. According to Ames, the Interlocal Cooperation Act distinguishes between contracts to purchase goods and services and contracts to provide governmental functions. Ames contends that it specifies that an agreement for the provision of a governmental function must specify that payments shall be made from current revenues. *See id.* §§ 791.011(d)(3), 791.025, 791.026. In contrast, when the contract is for goods and services, it does not have to specify that payments must be made from current revenues. According to Ames, this Contract specifies that payments must be made from current revenues, and therefore it is one for the performance of a governmental function and not one for goods and services.

4

Ames also argues that Liberty failed to establish that the Contract was properly executed, as required by section 271.151. *See* Tex. Loc. Gov't Code Ann. § 271.151(2)(A).[2] Ames emphasizes that Liberty failed to establish that the Contract was properly executed—that Liberty provided "no city council resolutions or other documents indicating that the mayors of both cities had the necessary authority to properly execute the purported contract." Therefore, according to Ames, Liberty failed to overcome the "heavy presumption" that a plaintiff's claims against a governmental immunity are barred.

Finally, Ames argues that the damages sought are not recoverable under Chapter 271. Ames contends the damages Liberty seeks for TCEQ-related expenses are consequential damages that are not recoverable under section 271.153(b)(1).[3] According to Ames, Liberty's interpretation of the Contract "attempts to illegally penalize Defendant by charging [] (in some invoices) seven times the normal rate

---

[2] Section 271.151(2)(A) states that a "'[c]ontract subject to this subchapter'" means "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity[.]" Tex. Loc. Gov't Code Ann. § 271.151(2)(A).

[3] Section 271.153(b) provides:

Damages awarded in an adjudication brought against a local governmental entity arising under a contract subject to this subchapter may not include:

(1) consequential damages, except as expressly allowed under Subsection (a)(1);

(2) exemplary damages; or

(3) damages for unabsorbed home office overhead.

Tex. Loc. Gov't Code Ann. § 271.153(b).

charged by the Plaintiff for wastewater[,]" which constitutes an illegal penalty not recoverable under section 271.153(a)(1).

<u>Liberty's Notice of Non-Suit Without Prejudice and Its Second Amended Petition</u>

Liberty filed a non-suit without prejudice, non-suiting its claims for:

. . . consequential damages are damages tied to the Agreed Order in TCEQ Docket No. 2015-1549-MWD-E and the Agreed Order in TCEQ Docket No. 2018-1495-MWD-E, as specifically referenced in Plaintiff's First Amended Petition at Paragraph 9 (costs of regulatory enforcement), and in portions of Paragraph 11 (only with respect to wastewater treatment plant operating costs).

Liberty filed a Second Amended Petition, which omitted the allegations about the TCEQ enforcement costs Liberty incurred due to Defendants' alleged breach of contract. Liberty's amended petition also pleaded that immunity had been waived under section 271.152 of the Texas Local Government Code. The Second Amended Petition was the live pleading at the time of the hearing on the plea to the jurisdiction.

<u>Liberty's Response to Defendants' Pleas to the Jurisdiction<br>and Argument on Appeal</u>

In its response to the plea to the jurisdiction and on appeal, Liberty argues that the Defendants' arguments are based on two fictions: (1) that the Legislature only waived immunity for situations where a private entity sues a public entity and not when a lawsuit is between two local governmental entities and (2) that a contract for goods and services under section 271.151 of the Texas Local Government Code does not apply to an interlocal agreement under Chapter 791 of the Texas Government

6

Code. According to Liberty, section 271.152 does not exclude contracts between governmental entities or limit the waiver of immunity to lawsuits where a private entity sues a local governmental entity. Liberty contends that Defendant's plea to the jurisdiction relies on dicta in *Austin Bridge* that did not "in any way shrink the scope of the Legislature's immunity waiver for breach of contract claims against local government entities." Liberty cites cases where the Chapter 271 immunity waiver has been applied to breach of contract cases between local governmental entities.[4] And Liberty also argues that, to determine whether Chapter 271 applies, the test is whether the entity allegedly in breach of contract is a governmental entity and not whether the party claiming breach is a governmental entity.[5] In addition, Liberty argues that the Texas Supreme Court has explained that whether a contract is an interlocal agreement under Chapter 791 has no bearing on whether

---

[4] *See Tex. Mun. League Intergovernmental Risk Pool v. City of Hidalgo*, No. 13-19-00096-CV, 2020 Tex. App. LEXIS 2093 (Tex. App.—Corpus Christi-Edinburg Mar. 12, 2020, no pet.) (mem. op.); *Tex. Mun. League Intergovernmental Risk Pool v. City of Abilene*, 551 S.W.3d 337 (Tex. App.—Eastland 2018, pet. dism'd); *San Patricio Mun. Water Dist. v. City of Corpus Christi*, No. 13-10-00272-CV, 2011 Tex. App. LEXIS 262 (Tex. App.—Corpus Christi-Edinburg Jan. 13, 2011, pet. denied) (mem. op.); *Tex. Ass'n of Sch. Bds. Risk Mgmt. Fund v. Benavides Indep. Sch. Dist.*, 221 S.W.3d 732 (Tex. App.—San Antonio 2007, no pet.).

[5] Citing *San Patricio Mun. Water Dist.*, 2011 Tex. App. LEXIS 262, at **29-30 ("We need not determine whether the waiver of immunity in section 271.152 is applicable to contracts calling for the provision of goods and services from a local government entity, because the contracts at issue here clearly call for the provision of goods and services to a local government entity, as explicitly contemplated in the statute.") (emphasis omitted).

governmental immunity has been waived under Chapter 271.[6] Liberty further explained "there is no statutory language or case law that carves out or renders inapplicable the Chapter 271 waiver for goods/services contracts if said contract *also* happens to serve as an interlocal agreement."

According to Liberty, there is "no question that Liberty provides services to Defendants pursuant to the Contracts,[] as it collects and treats wastewater flows from Ames and Hardin[,]" and the contracts at issue are "agreements between governmental entities by which Liberty provides wastewater collection and treatment services to Defendants in exchange for payments, including volumetric adjustments[.]"

Finally, Liberty argues that the rates charged for volumes greater than the Total Acceptable Volumes ("TAV")—the thresholds of wastewater discharge specified by the contracts—are not consequential damages "because the volumetric rates are agreed-upon amounts due and owed under the Contracts[.]" Rather, Liberty argues that the TAV charges are "a classic volumetric adjustment" designed to cover expenses Liberty accrues when the Defendants contribute more than the baseline sewage quantity and for which the Defendants agreed to pay additional charges.

---

[6] Citing *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 322, 327-28 (Tex. 2006) (explaining that because the Court held that immunity was waived under Chapter 271 of the Texas Local Government Code, the Court did not consider whether immunity was waived under Chapter 791 of the Texas Government Code).

Therefore, according to Liberty, characterizing such charges as "penalties" ignores the plain language of the contracts. Liberty also argues that, by its nature, capacity for wastewater treatment is finite and that excess flow from Ames will risk overloading the system or cause higher incremental costs.

As to Ames's contention that there is no evidence its Contract with Liberty was properly executed, Liberty argues that the burden shifted to Ames to prove that the Contract was not properly executed because Liberty presented prima facie evidence of contract formation and execution. Liberty contends that because the contract was signed by the mayor of Ames and the mayor of Liberty, the presence of their signatures is strong evidence that the parties assented to an agreement.[7]

After a hearing, the trial court signed an order denying the pleas to the jurisdiction. Ames appealed.

## Issues

Ames states four issues in its brief, but it does not include a separate argument for each issue. In its first issue, it states that the trial court erred in denying its plea to the jurisdiction. In its second issue, Ames argues that the Act does not waive its immunity from suit because the damages Liberty seeks are "an unenforceable penalty, consequential damages or exemplary damages[]" not covered by section

---

[7] Citing *Ridge Nat. Res., L.L.C. v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 120-21 (Tex. App.—El Paso 2018, no pet.) (citing *Wright v. Hernandez*, 469 S.W.3d 744, 757 (Tex. App.—El Paso 2015, no pet.)).

271.153. *See* Tex. Loc. Gov't Code Ann. § 271.153. In its third issue, Ames argues that its Contract with Liberty is not a contract subject to the Act because it does not contain the "essential terms" of the agreement, including the price for volumes in excess of the TAV and the time for performance, that the Contract was an interlocal agreement for performance of a governmental function and not a contract for "goods and services" as Liberty pleaded, and that Liberty failed to meet its burden to prove that the Contract was properly executed on behalf of Ames. In its fourth issue, Ames argues that Subchapter I only applies to a contract dispute between a governmental entity and a private party and it does not apply to a contract dispute between two governmental entities. We address the issues together below as stating a challenge to the trial court's denial of the plea to the jurisdiction. We address the individual arguments made by Ames as to whether the Contract is governed by Subchapter I of Chapter 271.

### Applicable Law

Governmental units, including municipalities, are immune from suit unless the State consents. *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018) (citing *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004)). The Local Government Contract Claims Act outlines the conditions under which immunity is waived from contract suits for local

10

governmental entities. *See* Tex. Loc. Gov't Code Ann. §§ 271.151-.160 ("Chapter 271, Subchapter I"). There is a "heavy presumption in favor of immunity[,]" and a statutory waiver of sovereign immunity must be "clear and unambiguous[.]" *See* Tex. Gov't Code Ann. § 311.034; *City of Galveston v. State*, 217 S.W.3d 466, 469 (Tex. 2007). A plea to the jurisdiction challenges the trial court's subject-matter jurisdiction over a case. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *Pineda v. City of Houston*, 175 S.W.3d 276, 279 (Tex. App.—Houston [1st Dist.] 2004, no pet.). Where the jurisdictional facts are not in dispute, we review the trial court's ruling on a plea to the jurisdiction under a de novo standard of review, liberally construing the plaintiff's pleadings and construing the evidence in favor of the nonmovant. *See Miranda*, 133 S.W.3d at 226.

Statutory waivers of immunity are to be construed narrowly. *See Tex. Adjutant General's Office v. Ngakoue*, 408 S.W.3d 350, 353 (Tex. 2013) (citing Tex. Gov't Code Ann. § 311.034). When construing a statute that purportedly waives immunity, we generally engage in a heavy presumption in favor of immunity and resolve ambiguities in favor of retaining immunity. *See Harris Cty. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 844 (Tex. 2009) (citing *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 697 (Tex. 2003)); *Gay v. City of Wichita Falls*, 457 S.W.3d 499, 504 (Tex. App.—El Paso 2014, no pet.) ("There is a 'heavy presumption' in favor of immunity.") (quoting *City of Galveston*, 217 S.W.3d at 469).

11

Under Chapter 271, Subchapter I, the Legislature has expressly waived governmental immunity for certain contracts with a governmental entity. Tex. Loc. Gov't Code Ann. § 271.152. For immunity to be waived under the statute, "(1) the contract must be in writing, (2) state the essential terms of the agreement, (3) provide for goods or services, (4) to the local governmental entity, and (5) be executed on behalf of the local governmental entity." *See City of Houston v. Williams*, 353 S.W.3d 128, 135 (Tex. 2011) (citing Tex. Loc. Gov't Code Ann. § 271.151(2)); *see also ICI Constr., Inc. v. Orangefield Indep. Sch. Dist.*, 339 S.W.3d 235, 239-40 (Tex. App.—Beaumont 2011, no pet.).

<u>Is the Additional Service Charge a claim for consequential damages?</u>

Section 271.153(b) limits damages that may be awarded:

Damages awarded in an adjudication brought against a local governmental entity arising under a contract subject to this subchapter may not include:
(1) consequential damages, except as expressly allowed under Subsection (a)(1);
(2) exemplary damages; or
(3) damages for unabsorbed home office overhead.

Tex. Loc. Gov't Code § 271.153(b).[8] The Texas Supreme Court has explained,

---

[8] Subsection (a)(1) of section 271.153 permits consequential damages "owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration[.]" Tex. Loc. Gov't Code Ann. § 271.153(a)(1). Because the contract at issue in this lawsuit is not a contract for construction, owner-caused delays or acceleration are not involved. *See Zachry Constr. Corp. v. Port of Houston Auth.*, 449 S.W.3d 98, 101 (Tex. 2014) (holding that immunity is waived for lawsuits involving construction contracts that seek damages for owner-caused delays).

12

> A contractual breach may give rise to either "direct" or "consequential" damages. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997). Direct damages are damages a defendant is "conclusively presumed" to have foreseen as a result of its breach because they "are the *necessary* and usual result of," and "flow naturally and *necessarily* from," that wrongful act. *Id.* (emphases added). By contrast, consequential damages "result naturally, but not necessarily," from the defendant's breach, and are not "the usual result of the wrong." *Id.*

*Dallas/Fort Worth Int'l Airport Bd. v. Vizant Techs., LLC*, 576 S.W.3d 362, 373 (Tex. 2019) (hereinafter "*Vizant*").

According to Ames, Liberty's claim for damages is not recoverable under section 271.153 because the damages that Liberty seeks are "an unenforceable penalty, consequential damages or exemplary damages[]" for which Chapter 271 does not waive immunity. At issue are the damages Liberty seeks under section 5.2(c) of the Contract, which provides:

> Additional Service Charge. AMES agrees to pay an additional charge for those volumes delivered in excess of the "Total acceptable Volume" ("TAV"). The TAV shall be defined as 200,000 gallons per day and an aggregate of 6,000,000 gallons per month. Volumes in excess of the TAV shall be charged at three (3) times the highest rate, calculated on a per gallon basis, then existing for sewer service within LIBERTY, or FIVE HUNDRED AND NO/100 ($500.00) DOLLARS per month, whichever amount is greater.

Ames argues that the Additional Service Charge is a penalty because the Contract makes it clear that delivering more than the TAV constitutes a breach of contract. Section 3.5 states,

These provisions for additional charges shall not be construed as giving AMES any rights by virtue of the payment of such amounts and any payment by AMES shall not prejudice the right of LIBERTY to exercise any other right or remedy available to it under this contract, including the right to declare the contract in breach or to seek injunctive relief for compliance with its provisions.

In addition, section 4.1 provides,

LIBERTY has reserved capacity for AMES in its sewer plant only for the volumes of sewage stated herein. Should the needs of AMES, for whatever reason (including infiltration), exceed the maximum, based on daily readings for total throughput, then LIBERTY shall be exposed to an inordinate cost of treatment by virtue of such excess, and AMES agrees to pay the additional compensation as provided in Section 5.2 (c) of this contract. However, such payment by AMES will not authorize or permit any excess volume. This provision for additional compensation shall not limit any right of LIBERTY to respond or remedy such violation of the maximum level of capacity.

Liberty's claim for damages alleges,

The Contracts [] require Defendants to pay service charges ("Service Charges") for wastewater volumes in excess of identified Total Acceptable Volumes (Section 5.2(c)). [] Ames' Total Acceptable Volume is also established at "200,000 gallons per day and an aggregate of 6,000,000 gallons per month" (Section 5.2(c)). Defendants have not paid Liberty owed Service Charges, as required under the Contracts.

In addition, Liberty alleged that it sought "[a]ctual damages of the balance due and owed under the Contracts[.]" In its appellate brief, Liberty described the Contract as imposing "volume-based rates[,]" and it characterizes the Additional Service Charge as "a classic volumetric adjustment for agreed-upon amounts due and owed under the Contract." Both parties discuss the *Austin Bridge* case. *See* 601

14

S.W.3d 616, 623. In that case the Texas Supreme Court addressed the question of whether the damages that Austin Bridge claimed were consequential damages or whether the amounts were due under the contract and for which immunity had been waived. *See id.* at 631. The Court explained the issue turned on "whether the contract in fact required the River Authority to pay for these additional costs." *Id.* The Court concluded that Austin Bridge had alleged some damage that flowed naturally and necessarily from the River Authority's alleged breach. *Id.* The Court then concluded that the damages claimed were direct damages for amounts Austin Bridge alleged which were due and owed by the local governmental entity under the contract and for which section 271.153 waives immunity. *See id.*

The Contract stated that Liberty's wastewater treatment plant had finite capacity and that Liberty had reserved capacity for Ames "only for the volumes of sewage stated" by the Contract. The Contract further provided that excess volumes would "expose[] [Liberty] to an inordinate cost of treatment[.]" The Contract then provided that an Additional Service Charge would be charged for volumes delivered by Ames that exceeded the Total Acceptable Volume. Applying the rationale from *Austin Bridge*, we conclude that the Additional Service Charge "flow[s] naturally and necessarily from" Ames delivering volumes that exceed the Total Acceptable Volume specified by the Contract, and the Contract required Ames to pay the Additional Service Charge. *See id.* Therefore, we conclude that the damages Liberty

15

sought for unpaid Additional Service Charges were amounts due and owing under the Contract for which section 271.153 waives immunity, and they are not consequential damages. *See id.*; *see also Vizant*, 576 S.W.3d at 373.

Ames also argues that the Additional Service Charge constitutes exemplary damages because it is a penalty. Generally, exemplary damages are those that are "'awarded as a penalty or by way of punishment.'" *See Flores v. Millennium Interests, Ltd.*, 185 S.W.3d 427, 434 (Tex. 2005) (quoting Tex. Civ. Prac. & Rem. Code Ann. § 41.001(5)). We have already explained that the Contract provides that the Additional Service Charge results from delivering volumes that exceed the Total Acceptable Volumes because the excess volumes expose Liberty to a higher cost of treatment. We reject Ames's argument that the Additional Service Charge is a penalty or exemplary damage for which immunity is not waived. *See* Tex. Loc. Gov't Code Ann. § 271.153.

Does the Contract contain the
essential terms of the agreement?

Ames did not argue in the trial court that the Contract lacked the essential terms of the agreement, but it makes that argument on appeal. The Texas Supreme Court has explained that while appellate courts do not consider issues that were not raised in the trial court, the parties may construct new *arguments* in support of issues that were raised below. *See Li v. Pemberton Park Cmty. Ass'n*, 631 S.W.3d 701, 704 (Tex. 2021) (citing *Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 764 n.4 (Tex.

2014)). Because all the arguments Ames raises on appeal relate to the issue of whether governmental immunity has been waived, we construe Ames's second issue as relating to the issue Ames raised at trial court. *See id.* In addition, whether governmental immunity has been waived determines subject-matter jurisdiction, which may be raised at any time. *See Reata Const. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006) ("We have held that sovereign immunity from suit deprives a trial court of subject-matter jurisdiction."); *see also Rusk State Hosp. v. Black*, 392 S.W.3d 88, 103 (Tex. 2012) (Lehrmann, J., concurring and dissenting) ("Subject matter jurisdiction cannot be waived or conferred by agreement, [and] can be raised at any time[.]"); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993) ("Subject matter jurisdiction is an issue that may be raised for the first time on appeal[.]").

We are guided by principles of contract interpretation to determine whether the terms of the written contract are sufficiently definite. *See Houston Cmty. Coll. Sys. v. HV BTW, LP*, 589 S.W.3d 204, 213 (Tex. App.—Houston [14th Dist.] 2019, no pet.). We construe the contract as a whole to determine the parties' intent when they executed the contract. *See Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 239 (Tex. 2016) (citing *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 841 (Tex. 2010)). "When 'the actions of the parties . . . show conclusively that they have intended to conclude a binding agreement, even though one or more terms are

missing or are left to be agreed upon[,] . . . courts endeavor, if possible, to attach a sufficiently definite meaning to the bargain.'" *Id.* (quoting Restatement (Second) of Contracts § 33 cmt. a (1981)).

Chapter 271 does not define "essential terms." *See* Tex. Loc. Gov't Code Ann. § 271.151(2); *Williams*, 353 S.W.3d at 138. An agreement's essential terms are those that parties would reasonably regard as "vitally important ingredient[s]" of their bargain. *See Fischer*, 479 S.W.3d at 237. Whether particular terms are essential generally depends on the specific contract at issue. *Id.*; *see also T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992) ("Each contract should be considered separately to determine its material terms.").

> An agreement's essential terms are those that parties would reasonably regard as "vitally important ingredient[s]" of their bargain. Whether particular terms are essential generally depends on the specific contract at issue. A contract must state its essential terms with "a reasonable degree of certainty and definiteness," sufficient to confirm that both parties actually intended to be contractually bound and to enable a court to understand and enforce the parties' obligations and provide an appropriate remedy when breached.

*Vizant*, 576 S.W.3d at 368-69 (quoting *Fischer*, 479 S.W.3d at 237) (citations omitted). The Texas Supreme Court has stated that "essential terms" generally include the names of the parties, the property at issue, the basic obligations, the time of performance, the price to be paid, and the service to be rendered. *See Kirby Lake Dev., Ltd.*, 320 S.W.3d at 838.

18

Ames argues that the Additional Service Charge cannot be calculated from the Contract because it does not include "the highest rate, calculated on a per gallon basis, then existing for sewer service within" the City of Liberty. Ames also argues that the Contract does not state the time for performance and only refers to Liberty's time for performance as "[u]pon completion of the construction" of Ames's sewer collection system.

The Additional Service Charge provision of the Contract states that the charge "shall be charged at three (3) times the highest rate, calculated on a per gallon basis, then existing for sewer service within LIBERTY, or FIVE HUNDRED AND NO/100 ($500.00) DOLLARS per month, whichever amount is greater." An essential term need not be stated with exactness or precision, but only with "a reasonable degree of certainty and definiteness[.]" *See Vizant*, 576 S.W.3d at 368-69; *Fischer*, 479 S.W.3d at 237. We find this term is reasonably certain and definite for the parties to understand their obligations and for a court to enforce the Contract. *See Vizant*, 576 S.W.3d at 368-69; *Fischer*, 479 S.W.3d at 237.

As to Liberty's time for performance, the Contract defines the Total Acceptable Volume as "200,000 gallons per day which is twice the normal dry weather flow per day and an aggregate of 6,000,000 gallons per month." The Contract also states that Ames shall install a meter "capable of recording total throughput on a daily basis" and produce an "accurate constant flow

19

measurement[.]" The Contract also refers to "daily readings for total throughput" in connection to whether Ames exceeds the maximum volumes of sewage. Taking these terms together with the nature and purpose of the Contract as a whole, we find that the Contract pertains to the flow of wastewater and sewage on a continual, ongoing basis, which is reflected by the use of the terms "daily" and "constant," and is sufficiently definite to confirm that the parties intended to be bound and would enable a court to enforce the Contract. *See Vizant*, 576 S.W.3d at 368-69; *Fischer*, 479 S.W.3d at 237. We conclude the Contract contains the essential terms of the parties' agreement.

### Is the Contract for "goods or services" under Chapter 271?

Ames raises several arguments in support of its contention that the Contract was not one for "goods and services" under Chapter 271, arguing: (1) Liberty pleaded that the Contract was "for goods and services, but the Contract reflects that it was not "a contract for goods *and* services[]" and nothing in the Contract provided for "any provision of goods to Ames[]"; (2) the term "services" does not cover what Liberty is obligated to do under the Contract because "[t]he Contract only obligated Liberty to passively 'receive and take'" volumes of sewage from Ames, the term "services" relates to action, conduct, performance, or deeds, and "[p]assively receiving sewage [] is not an 'activity,' 'conduct,' 'performance,' or 'deed[]'"; (3) the Contract is an interlocal agreement for performance of a governmental

20

function and not one for a service; (4) the Contract did not obligate Liberty to take volumes in excess of the TAV, and immunity is not waived for "'contracts in which the benefit that the local governmental entity would receive is an indirect, attenuated one'" or "'[w]hen a party has no right under a contract to receive services'"[9]; and (5) Liberty did not affirmatively demonstrate that the Contract was properly executed by Ames.

1. Is the contract for "goods or services"?

When reviewing a plea to the jurisdiction, we "construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent." *Miranda*, 133 S.W.3d at 226. In our de novo review of the trial court's ruling, we take as true all evidence favorable to the nonmovant, indulging in every reasonable inference and resolving all doubt that favors the nonmovant. *Id*. Section 271.153 requires that to be "subject to" the waiver of immunity, a contract must meet five elements: "(1) the contract must be in writing, (2) state the essential terms of the agreement, (3) provide for goods or services, (4) to the local governmental entity, and (5) be executed on behalf of the local governmental entity." *See Williams*, 353 S.W.3d at 135 (citing Tex. Loc. Gov't Code Ann. § 271.151(2)).

In its Amended Petition, Liberty pleaded as follows:

---

[9] Citing and quoting *Lubbock Cty. Water Control & Improvement Dist. v. Church & Akin, L.L.C.*, 442 S.W.3d 297, 303 (Tex. 2014).

[] The Legislature has waived immunity for the claims brought in this action pursuant to Section 271.152 of the Texas Local Government Code.

[] Each of the Contracts is a written contract for the provision of goods and services by Plaintiff to each defendant, properly executed on behalf of each defendant, consistent with the provisions of Section 271.151(2)(A) of the Texas Local Government Code.

Liberty pleaded that it has accepted wastewater from Ames for conveyance to its wastewater collection system and wastewater treatment plant. And Liberty pleaded that it "has furnished and continues to furnish services to the Defendants in the form of wastewater collection, treatment, and disposal."

Section 271.151(2) requires that a contract be for "goods or services" (among other requirements) to waive governmental immunity. Tex. Loc. Gov't Code Ann. § 271.151(2). Liberty's Amended Petition reflects that it pleaded that the contracts at issue were for the provision of services to Ames. Section 271.151(2) does not require the plaintiff to plead both "goods" and "services." *See id.*; *Williams*, 353 S.W.3d at 135. Ames has cited no legal authority for its argument that a pleading that states it supplied "goods *and* services"[10] disqualifies the Contract from the waiver of immunity under section 271.151, and we are aware of none. *See* Tex. R. App. P. 38.1(i) (requiring an appellate brief to cite to applicable legal authority). Therefore, we reject this argument.

---

[10] Emphasis added.

22

2. Was Liberty's Contract which provided for the receipt of wastewater, and treatment of such water at Liberty's wastewater treatment plant, a contract for "services"?

Ames argues that the term "services" means "to perform an 'activity' on behalf of another[]" and "is described in terms of 'action,' 'conduct,' 'performance' and 'deeds[,]'" citing to *Riverside National Bank v. Lewis*, 603 S.W.2d 169, 174 (Tex. 1980). In *Lewis*, the plaintiff alleged a claim for fraud under the Deceptive Trade Practices Act, and the matter did not involve nor address governmental immunity. *See generally id.* Ames argues that all this Contract calls for is a "passive" receipt of wastewater by Liberty. Even assuming without deciding that the Contract at issue in this case only required a passive receipt by Liberty, we do not agree that *Lewis* dictates the services provided here do not qualify as "services" under 271.151(2). As we have already explained, Liberty's Amended Petition stated that it provided "wastewater collection, treatment, and disposal[]" to Ames in performance of the Contract. *See, e.g.*, *Partners Dewatering Int'l, L.C. v. City of Rio Hondo*, No. 13-13-00340-CV, 2015 Tex. App. LEXIS 5861, at \*14 (Tex. App.—Corpus Christi-Edinburg June 11, 2015, pet. denied) (mem. op.) (concluding that a contract for collecting, hauling, and disposing of all sludge generated by the city's wastewater treatment plant constituted a service under Chapter 271). Further, the Texas Supreme Court has stated that "services" under Chapter 271 is "'broad enough to encompass a wide array of activities' and 'includes generally any act performed for the benefit

23

of another.'" *Austin Bridge*, 601 S.W.3d at 628-29 (quoting *Kirby Lake Dev., Ltd.*, 320 S.W.3d at 839). Here, Liberty not only receives wastewater from Ames, but it also treats the wastewater it receives at Liberty's wastewater facility, and that treatment is an act performed for the benefit of Ames. We reject Ames's argument and conclude that the Contract was for "services" under Chapter 271.

3. Was the Contract solely an interlocal agreement and not governed by Chapter 271?

Next, Ames argues that the Contract under which Liberty sued is merely an interlocal agreement under Chapter 791 of the Government Code[11] for the performance of a governmental function and not one for provision of a "service" as provided for under Chapter 271. The Texas Interlocal Cooperation Act provides the following definition:

> "Governmental functions and services" means all or part of a function or service in any of the following areas:
>     (A) police protection and detention services;
>     (B) fire protection;
>     (C) streets, roads, and drainage;
>     (D) public health and welfare;
>     (E) parks and recreation;
>     (F) library and museum services;
>     (G) records center services;
>     (H) waste disposal;
>     (I) planning;
>     (J) engineering;
>     (K) administrative functions;

---

[11] *See* Tex. Gov't Code Ann. §§ 791.001-.037 ("Texas Interlocal Cooperation Act," which allows political subdivisions to contract with one another to more efficiently share resources and responsibilities).

(L) public funds investment;
(M) comprehensive health care and hospital services; or
(N) other governmental functions in which the contracting parties are mutually interested.

*Id.* § 791.003(3). Ames argues that the Texas Interlocal Cooperation Act distinguishes between governmental functions and governmental services because it refers to "all or part of a function *or* service[.]" *See id.* (emphasis added). Ames further argues that the Legislature has identified the operation of sanitary sewers and sewer service as a "governmental function." *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a). Ames argues the Contract provides that payments must be made from current revenue, and that under the Interlocal Cooperation Act, a contract for the performance of a governmental function must specify that payments must be made from current revenues. *See* Tex. Gov't Code Ann. § 791.011(d)(3).

Liberty responds that there is no statutory language or case law that carves out or renders inapplicable the waiver of immunity under Chapter 271 for goods or services contracts when the contract also happens to serve as an interlocal agreement. We agree. Ames has cited no legal authority to support its argument that Chapter 271 does not apply to an interlocal agreement under Chapter 791 of the Government Code. *See* Tex. R. App. P. 38.1(i). The Texas Supreme Court declined to consider a similar argument in a lawsuit brought by a school district against a joint self-insurance fund composed of local political subdivisions, stating "[b]ecause we hold that Section 271.152 of the Local Government Code waives the Fund's

25

immunity from suit, we do not consider" the school district's argument that immunity is waived under the Interlocal Cooperation Act. *See Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Pol. Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 322, 327-38 (Tex. 2006) (hereinafter "*Ben Bolt*"). Similarly, because we hold that section 271.152 of the Local Government Code waives Ames's immunity from suit, we do not consider the argument relating to the Texas Interlocal Cooperation Act.

4. Did the Contract provide only an indirect, attenuated benefit?

The Texas Supreme Court has explained that "[w]hen a party has no right under a contract to receive services, the mere fact that it may receive services as a result of the contract is insufficient to invoke chapter 271's waiver of immunity. At best, such services are only an 'indirect' and 'attenuated' benefit under the contract." *See Lubbock Cty. Water Control & Improvement Dist. v. Church & Akin, L.L.C.*, 442 S.W.3d 297, 303 (Tex. 2014). The waiver of immunity under Chapter 271 typically only applies to contracts in which the governmental entity agrees to pay the claimant for the goods or services that the claimant agrees to provide to the governmental entity. *Id.* at 304. "[T]he absence of any agreement by the governmental entity to pay for goods or services may indicate that the claimant did not in fact agree to provide goods or services to the governmental entity." *Id.* at 305. In determining whether the services to be provided under a contract are only an

26

indirect or attenuated benefit, we look at the contract as a whole. *Id.* at 306 n.10; *see also Kirby Lake Dev., Ltd.*, 320 S.W.3d at 841 ("[W]e must evaluate the overall agreement to determine what purposes the parties had in mind at the time they signed the Agreements.").

Ames argues that the ultimate consumer of the sewer service "was not Ames, but rather those residents of Ames who connected to Ames'[s] sewer collection system[.]" Ames references section 13.002(25) of the Water Code, which states, "'Wholesale water or sewer service' means potable water or sewer service, or both, provided to a person, political subdivision, or municipality who is not the ultimate consumer of the service." Tex. Water Code Ann. § 13.002(25). Ames cites no legal authority explaining how the Water Code provision applies to Chapter 271. *See* Tex. R. App. P. 38.1(i). The Contract states that its primary purpose is "to provide sewer service to the CITY OF AMES and to allow AMES to provide sewer service within AMES' extraterritorial jurisdiction and the territory encompassed in the AMES-MINGLEWOOD WATER SUPPLY CORPORATION certificate of convenience and necessity."

Section 2.4 of the Contract provides,

[] Upon completion of the construction of the system, LIBERTY agrees to receive and take from AMES, for the price and at the point of deliver[y] hereinafter provided, and AMES agrees to discharge, for such price as provided in Article 5 of this contract and at such point of delivery, such volumes of sewage at such times as hereinafter

27

provide[d] in Article 4 of this contract, consistent with other limitations as stated herein.

The Contract further provides that Liberty has no responsibility "to accept prohibited waste that does not conform to the quality or quantity standards specified herein or materials that are in violation of the standards required under LIBERTY's discharge permits." The Contract further explains that Liberty's sewer plant has finite capacity, that Liberty has reserved capacity for Ames's needs, and that if Ames exceeds the maximum volumes, Ames agrees to pay an additional charge to compensate Liberty for the extra cost of treatment.

The main thrust of the Contract is the provision of sewer service to the City of Ames for which Ames agreed to pay. The Contract provides certain adjustments for volumes that exceed the normal flows expected by both Ames and Liberty. Construing the pleadings and Contract in favor of the nonmovant, we do not read the Contract as providing only an indirect or attenuated benefit to Ames. *See Church & Akin, L.L.C.*, 442 S.W.3d at 303, 306 n.10; *Kirby Lake Dev., Ltd.*, 320 S.W.3d at 841.

5. <u>Was the Contract properly executed?</u>

Ames argues that Liberty did not meet its burden "to affirmatively demonstrate that the Contract was 'properly executed' by Ames." Ames argued to the trial court that Liberty had provided no city council resolutions or other documents indicating that the mayors of both cities had the necessary authority to

properly execute the Contract, and Liberty produced no resolutions, minutes, or ordinances showing "the governing bodies' assent to the contract."[12] Liberty argues that because it alleged in its live pleading that the Contract was executed by the mayor for each City, and that it was properly executed, the burden shifted to Ames to prove that the Contract was not properly executed. Liberty also contends that the presence of the mayors' signatures on the Contract "'is strong evidence that the parties assented to an agreement.'"[13] Liberty also argues that Ames has not disputed the validity of its mayor's signature nor have they alleged on appeal that the mayors were not authorized to sign the Contract. According to Liberty, because there is prima facie evidence of contract formation, the burden is on Ames to offer evidence that would refute contract formation, which Ames did not do.

> Section 271.152 states,
>
> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

Tex. Loc. Gov't Code Ann. § 271.152; *see also Austin Bridge*, 601 S.W.3d at 624; *Williams*, 353 S.W.3d at 135. Here, our standard of review generally mirrors the

---

[12] Although Ames's arguments in the trial court addressed whether the mayors of *both* cities had the necessary authority to properly execute the Contract, on appeal Ames restricts its argument to whether Liberty presented evidence that the Contract was properly executed by Ames only.

[13] Quoting *Ridge Nat. Res.*, 564 S.W.3d 105 at 120-21.

summary judgment standard under Texas Rule of Civil Procedure 166a(c). *See Miranda*, 133 S.W.3d at 228; *see also* Tex. R. Civ. P. 166a(c). The burden is on the defendant to present evidence to support its plea to the jurisdiction, and if it does so, the burden then shifts to the plaintiff to show that a disputed material fact exists regarding the jurisdictional issue. *Miranda*, 133 S.W.3d at 228.

When, as here, a plea to the jurisdiction challenges the pleadings, we determine if the plaintiff has alleged facts affirmatively demonstrating subject-matter jurisdiction. *See Clark*, 544 S.W.3d at 770. Liberty's Original and Amended Petitions pleaded that the contracts were properly executed on behalf of the Defendants. Therefore, we conclude that Liberty's pleadings alleged facts that affirmatively demonstrated subject-matter jurisdiction.

When the plea challenges the existence of jurisdictional facts, we move beyond the pleadings and consider the evidence presented. *See id.* Liberty attached to its Original and Amended Petitions copies of the Contract with Ames reflecting signatures from the mayors of both Liberty and Ames and dated March 4, 2001. The burden was on Ames to present evidence in support of its plea to the jurisdiction. *See Miranda*, 133 S.W.3d at 228. Ames offered no evidence to controvert Liberty's pleadings. Therefore, Ames failed to meet its burden to create a disputed fact issue on this point. *See id.*

<u>Does Chapter 271 apply to a contract dispute
between two governmental entities?</u>

In its final issue, Ames argues that Chapter 271 is designed to resolve contract disputes between governmental entities and private parties and it is not a framework for resolving disputes between governmental entities. To support its argument, Ames cites a quote from *Austin Bridge. See generally* 601 S.W.3d 616. In that case, Austin Bridge and Road, L.P. (a private entity) sued the San Antonio River Authority (a governmental entity) over disagreements about the scope of work and payment. *See id.* at 618. In explaining the applicability of Chapter 271 in that case, the Texas Supreme Court addressed Subchapter I of Chapter 271, which is titled "Adjudication of Claims Arising Under Written Contracts with Local Government Entities":

> Subchapter I is a framework for resolving contract disputes between governmental entities and private parties by (1) providing a limited waiver of governmental immunity "for the purpose of adjudicating a claim for breach of [a] contract" against local governments, (2) setting limits on damages for those claims, and (3) clarifying that "contractual adjudication procedures" to resolve those claims are "enforceable."

*Id.* at 623 (footnotes omitted). *Austin Bridge* dealt with a contract dispute between a governmental entity and a private party. *See id.* at 618. We do not read the Supreme Court's description of Subchapter I to say that the chapter only applies to disputes between a governmental entity and a private party. The title of Subchapter I states it applies to "claims arising under written contracts *with* local governmental entities." *See* Tex. Loc. Gov't Code Ann., Ch. 271, subch. I (emphasis added). Ames has not

identified any language in the statute showing that the Legislature intended for Chapter 271, Subchapter I, to apply *only* to disputes between governmental entities and private parties and not to disputes between two (or more) governmental entities.

Although governmental immunity is a common law doctrine, the Texas Supreme Court has traditionally deferred to the Legislature, "assuming it to be 'better suited to balance the conflicting policy issues associated with waiving immunity.'" *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 58 (Tex. 2011) (quoting *Taylor*, 106 S.W.3d at 695). In construing how Chapter 271 applies in this case, Legislative intent is the polestar of statutory construction, and "it is the Legislature's sole province to waive or abrogate sovereign immunity." *See In re Tex. Educ. Agency*, 619 S.W.3d 679, 687 (Tex. 2021); *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002).

> Section 271.152 of the Texas Local Government Code provides:
>
> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

Tex. Loc. Gov't Code Ann. § 271.152. This "statute's plain language allows for enforcement of contracts *against local governmental entities* by waiving their immunity from suit." *Ben Bolt*, 212 S.W.3d at 327 (emphasis added). In this case, the City of Liberty seeks to enforce its contracts against a local governmental entity.

32

At the hearing on the pleas to the jurisdiction, the trial court stated:

> [W]e have to assume the legislature was fully aware of sovereign immunity and governmental immunity as it applies; and if that's the case them being fully aware they did not intend for this particular matter to be excluded from the waivers.
> They could have easily expressly excluded suits between local governmental entities, and they didn't do so.

We find nothing in the language of Chapter 271 that states the Act only applies to contracts between a private party and a governmental entity, nor does it exclude contracts between two or more governmental entities. Appellant has not identified any such language in the statute. The descriptive language in *Austin Bridge* that Ames relies on describes the facts in that case, and we do not read the language in *Austin Bridge* to place an additional limitation on the type of contracts covered under section 271.152. As the Supreme Court recently stated, "[w]e defer to the Legislature in waiving immunity because it is in a better position to weigh the conflicting public policy interests associated with subjecting the government to liability." *See Dohlen v. City of San Antonio*, 643 S.W.3d 387, 392 (Tex. 2022). The Legislature has expressly waived immunity for "claims arising under written contracts *with* local governmental entities" as defined within the specific legislative provisions and has not excluded claims between two governmental entities. *See* Tex. Loc. Gov't Code Ann., Ch. 271, subch. I (emphasis added). We conclude that Chapter 271 applies to this dispute.

33

Having addressed and overruled each of Ames's arguments, we conclude that the trial court did not err in denying the plea to the jurisdiction. We overrule Appellant's issues on appeal, and we affirm the trial court's order.

AFFIRMED.

$\text{_____}$
LEANNE JOHNSON
Justice

Submitted on October 11, 2022
Opinion Delivered February 23, 2023

Before Golemon, C.J., Johnson and Wright, JJ.

34